THE STATE OF WEST VIRGINIA *v.* OHIO HAZARDOUS WASTE FACILITY
APPROVAL BOARD ET AL., APPELLEES; BOARD OF HEALTH OF
COLUMBIANA COUNTY ET AL., APPELLANTS.

[Cite as West Virginia *v.* Hazardous Waste Facility Approval Bd.
(1986), 28 Ohio St. 3d 83.]

(No. 86-153—Decided December 24, 1986.)

*Anthony J. Celebrezze, Jr.,* attorney general, *J. Michael Marous* and *Susan E. Miller,* for appellee Hazardous Waste Facility Approval Board.

*Bricker & Eckler, Charles H. Waterman III* and *Gerald L. Draper,* for appellee Waste Technologies Industries.

*David Tobin,* prosecuting attorney, for appellant Columbiana County Board of Health.

*Buckingham, Doolittle & Burroughs* and *Ronald E. Alexander,* for appellant Community Protection Assn.

*Per Curiam.* Appellants first argue that the applicant for a hazardous waste facility permit is required by R.C. 3734.05(C)(6)(c) to produce evidence of alternative technologies in order to prove that its facility represents the minimum adverse environmental impact. If it does not, the board may not issue the permit. Although this proposition is certainly correct, we find that it has no application to the instant cause for the following reasons.

R.C. 3734.05(C)(6) provides:

"The board shall not approve an application for a hazardous waste facility installation and operation permit unless it finds and determines:

"* * *

"(c) That the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of various alternatives, and other pertinent considerations."

Appellants contend that the board illegally relieved the applicant WTI of its burden to prove minimal impact and to adduce evidence of alternative technology. We disagree.

In its order, the board acknowledged that the statute normally would require the board to evaluate the nature and economics of alternative technologies to determine whether a more advanced, more environmentally protective technology can and should be utilized. We agree. We also concur with the board's statement that where an applicant demonstrates that the technology it proposes is the most advanced, most environmentally protective technology available, no further examination of other technologies is necessary. The board's determination that the proposed technology was the most advanced is itself a finding that alternative

technologies were inferior, thereby fulfilling the requirement for such a finding under the above statute. The board should not be required to waste its time evaluating systems demonstrated to be inferior.

We also reject appellants' contention that the board improperly failed to consider alternative sites for the proposed facility. R.C. 3734.05 contains no requirement that the board consider alternative sites in every case, as appellants propose. The board must consider alternative sites only if it deems such evidence to be a "pertinent consideration" under R.C. 3734.05(C)(6)(c), but it is under no statutory obligation to do so. In the cause *sub judice,* the board did consider the appropriateness of the proposed location, and decided not to require additional siting information. This court will not substitute its judgment for that of the board, especially in areas of administrative expertise. *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 207 [12 O.O.3d 198].

Appellants next challenge the board's order on the ground that the board failed to adequately address the questions of whether the proposed facility represents the minimum risk of contamination of ground and surface waters, fires or explosions, and transportation accidents in accordance with the requirements of R.C. 3734.05(C)(6)(d).[1] Appellants also contend that the board failed to determine properly the nature and volume of the waste to be treated and stored at the facility as mandated by R.C. 3734.05(C)(6)(a). We cannot agree. Our careful review of the pertinent portions of the record and the board's lengthy order reveals that the board's findings on these matters are in fact supported by substantial, reliable and probative evidence and are in accordance with law. We are bound to defer to the board's interpretation and application of R.C. 3734.05 as the agency charged with implementation of that statute. Where the board's interpretation and application are lawful and supported by the requisite degree of evidence, its decision will not be disturbed. R.C. 3734.05(C)(7); *Columbus* v. *Pub. Util. Comm.* (1950), 154 Ohio St. 107, 119 [42 O.O. 186].

Appellants next contend that the board violated R.C. 3734.05(C)(3)(a)[2]

---

[1] R.C. 3734.05(C)(6) provides in pertinent part:

"The board shall not approve an application for a hazardous waste facility installation and operation permit unless it finds and determines:

"* * *

"(d)  That the facility represents the minimum risk of:

"(i)  Contamination of ground and surface water;

"(ii)  Fires or explosions from treatment, storage, or disposal methods;

"(iii)  Accident during transportation of hazardous waste to or from the facility * * *."

[2] R.C. 3734.05(C)(3) provides in pertinent part:

"Upon receipt of the completed application for a hazardous waste facility installation and operation permit and a preliminary determination by the staff of the environmental protection agency that that application appears to comply with agency rules and to meet the performance standards set forth in divisions (D), (I), and (J) of section 3734.12 of the Revised Code,

and deprived appellants of due process by limiting oral testimony to five minutes per witness. In rejecting this argument, we first note that the above statute merely requires that an opportunity for oral or written comments be provided. No particular duration for oral testimony is mandated. Under the circumstances of this case, we do not find that the five-minute limitation is unreasonable, given the fact that even with this restriction, the hearing lasted almost eight hours. Moreover, there was no restriction whatsoever on written comments, which were invited by the hearing officer. In sum, we find that the board afforded a reasonable opportunity for all interested persons to make their views known to the board. Lastly, we remark that there is no constitutional guarantee of a due process right to present oral testimony at a public hearing. *Federal Communications Comm.* v. *WJR* (1949), 337 U.S. 265.

The next argument posed by appellants is whether the board erred by allowing a former employee of the Ohio EPA to serve as hearing examiner at the adjudication hearing, to which the EPA was a party. Appellants maintain that the hearing examiner was biased by virtue of his former employment, and that they were thereby prejudiced in the presentation of their cause. For the reasons that follow, we reject this contention.

It is well-settled that a reviewing court must presume that the decision of an administrative agency is valid and was reached in a sound manner. See, *e.g.*, *Cleveland* v. *Budget Comm.* (1977), 50 Ohio St. 2d 97, 99 [4 O.O. 3d 207]. This presumption imposes upon appellants the burden of proving their contention that the hearing examiner in this cause was biased, partial or prejudiced to such a degree that his presence adversely affected the board's decision. *Ohio Motor Vehicle Dealers Bd.* v. *Central Cadillac Co.* (1984), 14 Ohio St. 3d 64, 67. Appellants rely on the examiner's former employment with the EPA at the time WTI's application was received as the sole support for an inference of bias. We do not consider this solitary factor sufficient to overcome the presumption of the integrity of the proceedings below.

Appellants' next argument alleges that the board committed prejudicial error when it failed to adopt the recommendations of the hearing examiner without articulating its reasons therefor. This contention is baseless. The board is under no duty to adopt the hearing examiner's recommendation. R.C. 119.09 provides that the recommendations "may be approved, modified, or disapproved" by the board. Ohio Adm. Code 3734-1-18(B) provided in pertinent part that "[w]hen the board's final action modifies or disapproves all or part of the [hearing examiner's]

---

the director of environmental protection shall transmit the application to the hazardous waste facility board, which shall:

"(a) Promptly fix a date for public hearing thereon, not fewer than sixty nor more than ninety days after receipt of the completed application. At the public hearing, any person may submit written or oral comments or objections to the approval or disapproval of the application. * * *"

report and recommendations, the final order shall include the reason for such modification or disapproval." We do not agree with appellants' contention that the board failed to comply with this requirement. The hearing examiner herein made two recommendations. He first urged the board to delay granting the permit until additional information on certain matters[3] could be obtained. Second, he recommended that if the permit was issued, the board should incorporate into the permit the conditions recommended by the EPA, and also that the board should require WTI to complete the "planning processes described in its application" and to operate the facility as stated therein. The board chose to reject the first recommendation based on its own findings. For every point on which the board disagreed with the hearing examiner, it stated its reasons for reaching an opposite conclusion. As to the second recommendation, the board adopted it essentially as given. The permit contained all the conditions recommended by the Ohio EPA[4] and it incorporated the rather generalized additional recommendations made by the hearing examiner. We find that the board has completely fulfilled its duty to state its reasons in those instances where it disapproved or modified the hearing examiner's recommendations.

Finally, appellants argue that the board may not grant a permit subject to conditions requiring that the applicant provide further information in the future to the Ohio EPA. Appellants contend that this condition constitutes an unlawful delegation to the Ohio EPA of the board's exclusive authority[5] to determine whether an applicant has met all the conditions prerequisite to the granting of a permit. We do not agree. First, R.C. 3734.05(C)(6) expressly grants the board the power to issue a permit "upon such terms and conditions as the board finds are necessary to ensure the construction and operation of the hazardous waste facility in accordance with standards of this section." Nor does the board's direction that WTI should submit further information to the Ohio EPA constitute a delegation of the board's authority. After the issuance of an operation permit, the facility "shall be subject to the rules and supervision of the director of environmental protection during the period of its operation, closure, and post-closure care, if applicable." R.C. 3734.05(D)(4). Thus, after the permit is issued, monitoring of the facility is the responsibility of the Ohio

---

[3] These matters include WTI's contingency, closure and personnel training programs, the safe handling of ignitable, reactive and incompatible substances, and the volume of wastes to be stored or treated at the facility.

[4] The Ohio EPA recommended that the permit contain conditions requiring updated waste analyses, an updated analysis plan, and master instructions for specific wastes to the Director of the Ohio EPA, to be submitted before operation of the facility. The Ohio EPA further recommended that operation of the facility be forbidden until the Ohio EPA Director gives written approval of these documents.

[5] R.C. 3734.05(C)(2)(b).

EPA, and the requirement that future information be directed to that agency is not an improper delegation of the board's authority.

Accordingly, based on the foregoing, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN and WRIGHT, JJ., concur.

DOUGLAS J., concurs in judgment only.

LOCHER, J., dissents.

LOCHER, J., dissenting. I am compelled to dissent from the majority opinion because it fails to address the real environmental concerns at issue. While approving WTI's perfunctory compliance with the "form" of Ohio's hazardous waste laws, the majority ignores the "substance" of environmental protection.

A permit to operate a hazardous waste treatment facility should not be granted as a matter of law when: (1) the facility is to operate on the bank of a major waterway; (2) the facility is to operate above a community's potential major source of drinking water; (3) the facility is located within the corporate limits of a municipality; and (4) the *exact* nature and volume of the hazardous waste are unknown.

One reason the permit in the case *sub judice* should not be granted is because no evidence has been presented by WTI concerning possible alternative locations for this facility. In its written order and opinion of April 27, 1984, the board stated in part:

"In this case, the Applicant has proposed hazardous waste treatment technologies and environmental protection technologies and systems for the proposed facility which are exemplary * * *.

"The WTI facility, as proposed, minimizes adverse environmental impacts to such a degree that the Applicant was not obliged to have presented evidence on alternative sites * * *."

While I applaud the innovative approach taken by WTI to combat hazardous waste disposal problems and the advanced technology it plans to implement in this proposed facility, I believe the choice of a site for this facility is inappropriate because an enormous number of persons would be adversely affected by an unexpected "accident" on this site.

This proposed facility will be located on the bank of one of our great natural resources, the Ohio River. The ecological balance and many lives could be destroyed by an accident of even *de minimis* proportions because of this location. By way of example one need only look to the millions of Europeans currently affected by the recent contamination of the Rhine.

Another problem is that the site apparently sits above a one thousand gallon per minute aquifer which is a future high yield source of drinking water for those in Columbiana County. Although there is no evidence that the proposed facility is dependent upon the river or the aquifer, the risks associated with this location can be grave.

The hazardous waste that will be delivered to the plant for disposal by truck and by rail will likely be transported through numerous residential areas and pass by a hospital, schools, taverns, churches and the business district of East Liverpool. The grievous potential for danger engendered by a derailment or highway accident is an additional concern militating against the plant's proposed location. Recently, near Miamisburg, Ohio, hundreds of people had to be evacuated from their homes following the derailment of a train carrying toxic chemicals. Clearly, in the present case, an alternative site is required.

WTI requests a permit when it cannot describe the exact nature or volume of the hazardous waste it intends to treat, store and dispose. It is unclear from the record how adequate safety precautions can be taken when the mixture of hazardous substances in question is unknown.

The pleas of the citizenry of East Liverpool and surrounding areas have virtually been ignored. Appellants claim all the local governmental bodies are opposed to the proposed location of the facility. This includes a majority of council of East Liverpool, council of Wellsville, Columbiana County Board of Health, Columbiana County Board of Commissioners and the county and municipal governments in Hancock County, West Virginia.

Despite the finding of the board that the proposed facility is exemplary, I believe the widespread effects of a potential disaster on the site are too great and too many questions remain unanswered. Moreover, the board herein seems blinded by the technological sophistication of the plant when time and again human error has managed to overcome "fail-safe" technology from Bhopal to Chernobyl to the Rhine. One cannot and should not presume that the worst will occur. However, proper planning requires fallback measures to ensure that even a "minor" accident by plant management standards does not turn the southern portion of this state into a wasteland. There cannot be any reason good enough, in my view, for the plant's current proposed location. Prudent land management and conservation are ill served by the decision today.

Accordingly, I will not join in today's decision and I cannot condone the hasty action by the board in approving the plant site.