**GREENPEACE, INC.; Frank C. Smith; M. Joy Allison; Becky J. Ammon; Beth Knapp; Becky Tobin; Robert McKinnon; Margery McKinnon; Virgil Reynolds; Lois Sevy; Keith Sevy; Alonzo Spencer; and Teresa Swearingen, Plaintiffs–Appellees,**

v.

**WASTE TECHNOLOGIES INDUSTRIES; and Von Roll (Ohio), Inc., Defendants–Appellants.**

No. 93–3216.

United States Court of Appeals, Sixth Circuit.

Argued June 25, 1993.

Decided Nov. 19, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 3, 1994.

Christopher D. Stanley, Cleveland, OH, Edward Slavin (briefed), Legal Counsel for Constitutional Rights, Mick G. Harrison (argued and briefed), Richard E. Condit (briefed), Government Accountability Project, Washington, DC, for plaintiffs-appellees.

Bernadette J. Bollas (briefed), Randolph Carson Wiseman (argued and briefed), Charles H. Waterman, III (briefed), Bricker & Eckler, Columbus, OH, for defendants-appellants.

James W. Wiggin, III, Thompson, Hine & Flory, Cincinnati, OH, Edward W. Warren, Kirkland & Ellis, Washington, DC (briefed), for National League of Cities, amicus curiae. National Solid Wastes Management Ass'n, Solid Waste Ass'n of North America, Integrated Waste Services Ass'n, Coalition for Responsible Waste Incineration, Cement

Kiln Recycling Coalition and Ohio Chemical Council, amicus curiae.

Before: KENNEDY and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

Defendants Waste Technologies Industries and Von Roll (Ohio), Inc. (collectively "WTI"), appeal the order issued by the district court at the behest of plaintiffs Greenpeace, Inc., and twelve East Liverpool, Ohio, residents (collectively "Greenpeace"). The order enjoins WTI from continuing limited operation of its East Liverpool hazardous waste incinerator while the United States Environmental Protection Agency ("U.S. EPA") makes a final permitting decision regarding the facility. Because the district court erred in concluding that it had subject matter jurisdiction over this case, we reverse.

## I.

WTI owns and has begun limited operation of a hazardous waste storage and treatment facility located in East Liverpool, a town of approximately 13,600 residents on the Ohio/West Virginia border. The facility lies on twenty-two acres of land bounded by the Ohio River, railroad tracks, and other industries. It contains an incinerator designed to thermally oxidize hazardous wastes in a rotary kiln.

Since WTI began fulfilling regulatory requirements in 1981, the company has complied with all permitting requirements established by both the United States and Ohio EPAs, and their governing statutes and regulations. WTI applied to the U.S. EPA for construction and operating permits under the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901 et seq., and to the Ohio EPA to assure compliance with the federal Clean Air and Clean Water Acts, 42 U.S.C. §§ 7401 et seq., and 33 U.S.C. §§ 1251 et seq., respectively, the administration of which has been delegated by the U.S. EPA to its Ohio counterpart. WTI also submitted an application to the Ohio EPA and the Ohio Hazardous Waste Facility Board, which administer Ohio's hazardous waste fa-

cility siting statutes. The history of this permitting process shows that plaintiffs failed to take advantage of numerous opportunities to raise the claims that they belatedly make here.

### A. Federal RCRA Permits

In 1983, after considering the WTI application for almost two years, the U.S. EPA published a notice of intent to issue an RCRA permit. It then conducted a public hearing, solicited public comment, and thereafter issued a permit decision in June 1983. Facility opponents appealed the decision. In response to the appeal, the EPA reopened the public comment period and considered additional comments, but once again issued a permit in January 1985. Neither Greenpeace nor anyone else appealed this decision to a United States Circuit Court of Appeals under the appellate procedure set forth in 42 U.S.C. § 6976(b).

In February 1992, the U.S. EPA modified the RCRA permit at WTI's request to add additional pollution control equipment. Appeals by facility opponents were denied by the Environmental Appeals Board on June 24, 1992. Once again, neither Greenpeace nor anyone else appealed that decision to an appropriate circuit court.

### B. Ohio Clean Air/Clean Water Permits

In November 1982, following a fifteen-month review of the WTI application, the Ohio EPA conducted a public comment period and a public hearing. In February 1983, the Ohio EPA issued permits authorizing construction of the facility and specifying emission and effluent limits. Those permits have since been revised eight times to include regulatory changes and WTI-initiated improvements in facility design. Neither Greenpeace nor anyone else appealed the original permit, nor any of the revisions (the most recent of which was made in July 1992).

In November 1992, the Ohio EPA issued an operating permit to WTI under the Clean Air Act and its Ohio statutory counterparts. Neither Greenpeace nor anyone else appealed the issuance of the operating permit.

### C. *Ohio Hazardous Waste Facility Board Permit*

In November 1982, following a twelve-month preliminary review, the Ohio EPA sent WTI's application for a siting, installation, and operating permit to the Ohio Hazardous Waste Facility Board ("HWFB"). Over the next eighteen months, the HWFB reviewed the application and conducted a lengthy public comment period, two public hearings, and a month-long adjudication hearing in which WTI and several opponent groups were parties. Following review of the evidence, the HWFB issued a permit for the WTI facility in April 1984.

The HWFB decision was appealed by facility opponents to the Ohio Court of Appeals, which affirmed the decision. That decision was appealed to, and affirmed by, the Ohio Supreme Court. *State of W. Va. v. Ohio Hazardous Waste Facility Bd.*, 28 Ohio St.3d 83, 502 N.E.2d 625 (1986). Neither Greenpeace nor anyone else pursued a further appeal to the United States Supreme Court.

On April 21, 1992, nine months prior to the start of this case, West Virginia Attorney General Mario Palumbo and others filed a complaint and motion for injunctive relief in the United States District Court for the Northern District of West Virginia. On November 12, 1992, the court denied the motion to enjoin the WTI facility. Three appeals regarding the West Virginia action were filed. One appeal dealt with whether the district court had subject matter jurisdiction to entertain the claims alleged.

The facility has been in limited commercial operation since November 12, 1992, and has been burning hazardous waste pursuant to its RCRA permit limits since December 9, 1992. In order to receive approval for full-scale operation, however, the RCRA permit required the facility to conduct an eight-day trial burn to give the U.S. EPA data with which to make a final permitting decision. The permit allowed the facility to continue limited operation while this decision was being made.

On January 13, 1993, forty-eight hours before WTI was scheduled to begin the trial burn, Greenpeace filed a complaint and a motion for injunctive relief in the United States District Court for the Northern District of Ohio. Greenpeace named as defendants WTI as well as the U.S. EPA, its Administrator, the Ohio EPA, and individual employees of the Ohio EPA. Greenpeace filed the action under 42 U.S.C. § 6972(a)(1)(B), one of the RCRA citizen-suit provisions, alleging in Count 1 that operation of the facility would pose an imminent and substantial endangerment to public health and the environment through indirect exposure (including food chain exposure) to facility dioxin emissions.[1] In Counts 2 through 7, Greenpeace alleged that the U.S. EPA should have included additional conditions in WTI's trial burn plan, that operation of the facility in compliance with federal and state hazardous waste and air pollution requirements would constitute a public nuisance, and that the U.S. EPA violated the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* Greenpeace sought to enjoin the trial burn as well as the continued limited operation of the facility during the post-trial burn period.

On January 15, 1993, the district court in Ohio issued a temporary restraining order enjoining the trial burn pending a hearing on Greenpeace's motion for preliminary injunction, but allowed the continued limited operation of the facility. Despite arguments from WTI and the U.S. EPA that no district court had subject matter jurisdiction to review the claims at issue, the district court held a second preliminary injunction hearing regarding whether WTI could operate in compliance with its state and federal permits. The court allowed evidence on only two issues: (1) the potential harm from indirect exposure to dioxin and dioxin-line compounds during the trial burn and post-trial burn period; and (2) whether the trial burn had to be conducted before an indirect exposure assessment could be done.

---

**1.** Nothing in the record suggests, nor has Greenpeace argued, that the alleged dioxin risk only became known in January 1993, or after the time to appeal the last RCRA permit modification expired in October 1992.

On March 5, 1993, the district court entered an order that found operation of the facility during the post-trial burn period was likely to cause four additional cancer deaths per 100,000 residents. *Greenpeace, Inc. v. Waste Technologies Indus.*, No. 4:93CV0083, 1993 WL 134861 (N.D.Ohio Mar. 5, 1993). The court held that this "clearly may cause imminent and substantial endangerment to health and the environment," and therefore (1) denied Greenpeace's request to enjoin the trial burn, but (2) enjoined the limited operation of the facility during the post-trial burn period. The court also dismissed Counts 2 through 7, and dismissed the U.S. EPA defendants and Ohio EPA defendants.

On March 8, 1993, WTI filed a notice of appeal and also moved for an emergency stay of the district court's order. On March 16, a panel of this court granted WTI's request for a stay of the order pending appeal, and established an expedited appeal schedule.

The trial burn was conducted following the March 5, 1993 district court order. After this court stayed the order, the facility resumed the limited commercial operation allowed under the RCRA permit during review of the trial burn data. That review may take as long as a year to complete.

On March 22, United States Supreme Court Justice John Paul Stevens, acting in his capacity as Circuit Justice, denied an application by Greenpeace to vacate this court's stay of the district court injunction.

On March 23, the Fourth Circuit ruled that the West Virginia District Court had lacked subject matter jurisdiction in the *Palumbo* case, holding that Congress has statutorily precluded district courts from entertaining jurisdiction over what amounts to a collateral challenge to an issued RCRA permit. *Palumbo v. Waste Technologies Indus.*, 989 F.2d 156 (4th Cir.1993).

## II.

The district court held that it had subject matter jurisdiction under one of the citizen-suit provisions of the RCRA, 42 U.S.C. § 6972(a)(1)(B), to determine "whether dioxin emissions from the trial burn and the post-trial burn period will present an imminent and substantial endangerment to health or the environment through indirect exposure." The court justified this conclusion by stating that "[e]ven if WTI has met all necessary regulations and received all necessary permits, it may still be the case that the trial burn and the post-trial burn period will present a substantial and imminent endangerment."

We conclude that this rationale is flawed for several reasons. First, when we read 42 U.S.C. § 6972(a)(1)(B) in the context of other RCRA provisions that specifically deal with permits, it is clear that Congress did not intend for § 6972(a)(1)(B) to authorize citizen suits against persons operating hazardous waste facilities within the limits of valid RCRA permits. However, even if Congress did intend to allow some citizen suits alleging risk of imminent and substantial endangerment to be brought against some permitted operators, it remains quite clear that § 6972(a)(1)(B) does not confer district court jurisdiction over this suit, because Greenpeace's complaint, like the similar complaint that the Fourth Circuit dismissed for lack of jurisdiction in *Palumbo*, amounts to nothing more than an improper collateral attack on the prior permitting decisions of the U.S. EPA to allow the test and post-test burns. *Palumbo*, 989 F.2d at 159.

### A. Section 6972(a)(1)(B) Suits Inapplicable to Permitted Activity

We first address whether 42 U.S.C. § 6972(a)(1)(B) grants a district court jurisdiction to consider a citizen suit claiming that WTI, by operating within the limits of its valid RCRA permit, may nevertheless present an imminent and substantial endangerment to health or the environment. Although perhaps not obvious from § 6972(a)(1)(B) standing alone, we are convinced that the correct answer to this question is "no."

The issue of whether 42 U.S.C. § 6972 conferred jurisdiction upon the district court is a matter of statutory interpretation, a question of law that this court reviews *de novo*. *In re Vause*, 886 F.2d 794, 798 (6th Cir.1989). The objective of such interpretation is to ascertain the intent of Congress.

*Id.* Although the court below relied upon a district court decision in Pennsylvania and certain legislative history to support its finding of jurisdiction, "[t]he starting point for interpreting a statute is the language of the statute itself." *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 56, 108 S.Ct. 376, 380, 98 L.Ed.2d 306 (1987) (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)).

Under certain specified circumstances, § 6972(a)(1) provides for citizen-initiated lawsuits to augment government environmental enforcement. It provides as follows:

**(a) In general**

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]

42 U.S.C. § 6972(a)(1)(A)–(B). Greenpeace argues that the broad reference in subsection (a)(1)(B) to "any person" applies with equal force to operators with permits as well as those without permits.[2]

However, when Congress enacted the RCRA and its subsequent amendments, it created a complex response to the problems involved in safely disposing of hazardous waste. When confronted with such a complex statutory scheme, a court cannot discern congressional intent by reading an isolated subsection such as (a)(1)(B) without reference to other related provisions.

■ We must interpret the statute as a whole, making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous. *Lake Cumberland Trust, Inc. v. U.S. E.P.A.*, 954 F.2d 1218, 1222 (6th Cir.1992) (citing *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir.1991)), *modified* (April 10, 1992); 2A *Sutherland Stat. Const.* § 46.05 (5th ed. 1992). The difficulty with reading in isolation the words "any person" in § 6972(a)(1)(B) to include permitted operators becomes apparent when one considers the RCRA provisions that specifically deal with appeals of permit decisions.

Section 6925(a) requires each person owning or operating a hazardous waste treatment, storage, or disposal facility to have a permit issued pursuant to the RCRA. Obtaining such a permit is difficult. As one commentator described it, "[t]he EPA's graphic on the RCRA permitting process looks something like the organizational chart of the Prussian army, with no less than twenty-six notable loci of decision." 4 William H. Rodgers, Jr., *Environmental Law* § 7.13, at 113 (1992). Several of these loci provide opportunities for public input into the permitting decision. Once the EPA's regional personnel make a preliminary determination that a permit should be issued, public notice

---

2. Greenpeace maintains that to hold otherwise would render the right to bring citizen suits under subsection (a)(1)(B) a nullity, because other RCRA sections already require hazardous waste operators to obtain RCRA permits. 42 U.S.C. § 6925. However, the right to bring citizen suits is deliberately redundant of other statutory protections: Congress believed that by giving citizens themselves the power to enforce these provisions by suing violators directly, they could speed compliance with environmental laws, as well as put pressure upon a government that was unable or unwilling to enforce such laws itself. *See generally* H.R.Rep. No. 198, Part I, 98th Cong., 2d Sess. 53 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5576, 5612.

establishing a written comment period is issued. Interested persons are required to raise all matters they wish to contest during the comment period. EPA regulations make available an informal hearing upon a demonstration of "a significant degree of public interest" in the draft permit. 40 C.F.R. § 124.12(a)(1).

If the EPA then decides to issue the permit, that decision may be appealed to the EPA Administrator, and then to the appropriate United States Circuit Court of Appeals. 42 U.S.C. § 6976(b). Section 6976(b) sets the ground rules for judicial review of the RCRA permits. It provides that review of the EPA Administrator's decision in issuing, denying, modifying, or revoking any permits for treatment, storage, or disposal of hazardous waste

> may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such issuance, denial, modification, revocation, grant, or withdrawal, or after such date only if such application is based solely on grounds which arose after such ninetieth day. *Action of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement.* Such review shall be in accordance with sections 701 through 706 of Title 5.

42 U.S.C. § 6976(b) (emphasis added).

The provisions Congress wrote into § 6976(b) demonstrate that it intended to make it quite difficult to have an EPA permitting decision reversed in court. By specifying that courts of appeals are to review the permit decision in accordance with 5 U.S.C. §§ 701–706, the judicial review provisions of the Administrative Procedure Act, Congress manifested an intention that these courts adhere to a standard of review that is deferential to the EPA's expertise in these matters. *See* 5 U.S.C. § 706; *Palumbo,* 989 F.2d at 161. By specifying that review of the Administrator's permit decisions may be had in

the courts of appeals within ninety days, but otherwise "shall not be subject to judicial review in civil or criminal proceedings for enforcement," Congress gave the courts of appeals exclusive jurisdiction to review permit decisions and render judgments that cannot be relitigated or otherwise collaterally attacked in the district courts. *See, e.g., Louisville and Nashville R.R. Co. v. Donovan,* 713 F.2d 1243, 1245 (6th Cir.1983) (citing *Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 420, 422, 85 S.Ct. 551, 557, 558, 13 L.Ed.2d 386 (1965)), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *see also Palumbo,* 989 F.2d at 159, 161. Congress established such exclusive jurisdiction "to insure speedy resolution of the validity of EPA determinations." *Environmental Defense Fund v. U.S. E.P.A.,* 485 F.2d 780, 783 (D.C.Cir.1973).

Nothing in the language or legislative history of § 6976(b) suggests that § 6972(a)(1)(B) is somehow exempt from its limitations. Indeed, the legislative history of §§ 6972(a)(1)(B) and 6976(b) only underscores that citizens may not bring § 6972(a)(1)(B) suits to challenge permitted activity.

In the Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98–616, § 403(d)(5), 98 Stat. 3221, 3273 (1984) ("HSWA"), the legislation that created § 6972(a)(1)(B), Congress amended § 6976(b). Congress added to § 6976(b) the sentence stating that "[a]ction of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement." 42 U.S.C. § 6976(b). Prior to the 1984 HSWA, this sentence had been in § 6976(a)(1), which addresses appeals of the EPA's promulgation of regulations, but was not in § 6976(b), which addresses appeals of the EPA's permitting decisions. *Compare* 42 U.S.C. § 6976(a)(1) *with* 42 U.S.C. § 6976(b) (1980) (amended 1984). The House Conference Report indicated the intended relationship between the enactment of § 6972(a)(1)(B) and the amendment of § 6976(b) by noting that citizen suits "are prohibited ... with respect to siting and

permitting of hazardous waste facilities." H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. 117–18 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5649, 5688–89.

Another provision enacted as part of the HSWA, subsection (b)(2)(D) of § 6972 itself, places express limitations on the right to initiate citizen suits under subsection (a)(1)(B). Subsection (b)(2)(D) provides that "[n]o action may be commenced under subsection (a)(1)(B) of this section by any person (other than a State or local government) with respect to the siting of hazardous waste treatment, storage, or a disposal facility, nor to restrain or enjoin the issuance of a permit for such facility." 42 U.S.C. § 6972(b)(2)(D). Significantly, the House Report explained this limitation by noting that "[t]he Committee believes that other legal authority is available to challenge deficiencies in the permitting process." H.R.Rep. No. 198, Part I, 98th Cong., 2d Sess. 53 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5576, 5612.

▇ Overall, then, when one views § 6972(a)(1)(B) in the context of the text and legislative history of §§ 6976(b) and 6972(b)(2), the RCRA provisions that specifically address judicial review of the RCRA permits, it becomes apparent that the authority given citizens under § 6972(a)(1)(B) to sue any person does not extend to persons operating hazardous waste facilities in compliance with valid RCRA permits. The language of § 6972(b)(2)(D) clearly states that citizens may not commence § 6972(a)(1)(B) suits "with respect to the citing of [a] hazardous waste ... disposal facility, nor to restrain or enjoin the issuance of a permit for such facility." 42 U.S.C. § 6972(b)(2)(D). Any review of permitting decisions must be sought only before the appropriate United States Circuit Court of Appeals. 42 U.S.C. § 6976(b).

Greenpeace, however, attempts to sustain its broad reading of § 6972(a)(1)(B) by urging a very narrow reading of §§ 6976(b) and 6972(b)(2)(D). Greenpeace argues that these limitations prohibit subsection (a)(1)(B) suits in only two situations: when such suits challenge facility siting decisions, or when they challenge a permit before it is issued.

Under this interpretation, a permit not yet issued can only be appealed to the court of appeals under the deferential standards of review mandated in § 6976(b). As soon as the permit is issued, however, Greenpeace contends that it can then attack the permit in district court free of the limitations of § 6976(b) so long as it alleges that operation in compliance with that permit "may present an imminent and substantial endangerment."

We reject this interpretation because it would render meaningless the permit appeal procedure explicitly set out in § 6976(b), and thereby undermine policy considerations underlying the enactment of § 6976(b). The explicit limitations on judicial review of permits would be rendered a nullity if citizen suits could be brought against permitted activity under § 6972(a)(1)(B). If given a choice in the matter, facility opponents could be expected to avoid placing themselves at the disadvantage of appealing an RCRA permit in the court of appeals under the difficult standards of § 6976(b), when they only need wait until the permit has been issued to attack it in district court as an imminent and substantial endangerment under the far less restrictive rules governing § 6972(a)(1)(B) suits. We therefore agree with the Fourth Circuit's conclusion in *Palumbo* that keeping open a collateral route to attack permitted activity would eviscerate the limited permit appeal process set up by § 6976(b), *Palumbo*, 989 F.2d at 162, since it would offer would-be litigants an effective "end run" around all the limitations in § 6976(b). Fully legitimate hazardous waste operators, although in possession of permits from the federal government for all their activities, would still be exposed to the risk of spending enormous amounts of time and money in court defending against those second-guessing the permit decisions. This process could only hobble efforts to deal effectively with the mounting dangers of hazardous waste.

▇ We therefore conclude that the only method Congress provided in the RCRA to challenge permitted activity is a challenge to the permit itself through § 6976(b). *See* Jeffrey G. Miller, Environmental Law Institute, *Citizen Suits: Private Enforcement of Federal Pollution Control Laws* 32–33 (1987)

(citizen suit provisions "are not substitutes for the judicial review sections of the various statutes"). A hazardous waste operator's compliance with the terms of its RCRA permit precludes district court jurisdiction under § 6972(a)(1)(B) to challenge properly permitted activity.

### B. An Improper Collateral Attack on the Permitting Decisions

■ It seems plain that Greenpeace's objective is to attack the validity of the EPA permit decisions. It refers to the incinerator as being "allegedly properly permitted," and seeks to enjoin the test burn as well as any other incineration of waste or waste handling activity. As the district court's opinion noted, U.S. EPA regulations did not allow the EPA Administrator to approve a permit for the test burn without having first determined that "the trial burn itself will not present an imminent hazard to human health or the environment." 40 C.F.R. § 270.62(b)(5)(ii) (1992). Accordingly, when Greenpeace alleged in its complaint that the test burn and post-test burn would present an imminent and substantial endangerment, it was asking the district court to review and enjoin the EPA Administrator's permit decision. That, as we have pointed out, would contravene the provisions of §§ 6972(b)(2)(D) and 6976(b).

If Greenpeace was prepared to demonstrate that the U.S. EPA disregarded an imminent hazard at the time it issued the permit for the test burn and post-test burn period, 42 U.S.C. § 6976(b) required Greenpeace to bring its appeal directly to this court within ninety days. Because that was not done, Greenpeace forfeited any opportunity for judicial review of claims that could have been raised by appealing the RCRA permit amendments in 1992. *See City of Rochester v. Bond,* 603 F.2d 927, 931 (D.C.Cir.1979).

Greenpeace may have believed that citizen suits brought under § 6972(a)(1)(B) are appropriate vehicles to address a substantial and imminent endangerment that arises after the EPA permit is issued. This concern, however, is fully addressed by other provisions in the regulatory scheme. Under 42 U.S.C. § 6976(b), provision is made for a delayed appeal to this court if, after the

ninety-day appeal period has elapsed, facts come to light that would have changed the agency's permitting decision about substantial and imminent endangerment. In addition, the EPA can modify or terminate a previously issued permit at any time if it determines that a facility presents an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6973(a), 40 C.F.R. §§ 270.41, 270.43(a)(3) (1992).

As noted earlier, however, the record in this case does not indicate that the dioxin risk alleged in Count 1 of Greenpeace's complaint became known only after the time to appeal the U.S. EPA's permitting decisions had elapsed. This suggests that the dioxin issue was raised not because of any new realization of imminent environmental danger, but simply as a way for facility opponents to seek what it hoped would be a more favorable forum than the appeal procedure provided by Congress.

### III.

For the foregoing reasons, this cause is **remanded** to the district court with instructions that it be dismissed for lack of jurisdiction.