OPINION
Appellant Donald K. Summerfield, D.M.D., appeals the April 17, 1998 Memorandum of Decision of the Licking County Court of Common Pleas, which affirmed appellee the Ohio State Dental Board's September 10, 1997 Adjudication Order suspending appellant's license to practice dentistry for three months, prohibiting appellant from providing endodontic treatment to patients, and requiring appellant to complete twenty hours of continuing education in ceramic restorative dentistry.
 STATEMENT OF THE FACTS AND CASE
On September 18, 1995, appellee the Ohio State Dental Board (hereinafter "the Board") sent appellant a Notice of Opportunity for Hearing concerning substandard endodontic and restorative treatment rendered by appellant on two patients and improper insurance billing and payment practices. Appellant requested a hearing in regard to the allegations contained in the notice. A hearing examiner conducted a hearing on March 17, 18, and 26, 1997. On July 25, 1997, the hearing examiner issued his Report and Recommendation (hereinafter "Report"). Subsequently, on September 18, 1997, the Board issued its Adjudication Order (hereinafter "Order"). Thereafter, on October 1, 1997, appellant filed a Notice of Appeal pursuant to R.C. 119.12 in the Licking County Court of Common Pleas.
The trial court approved the parties' agreed briefing schedule. After consideration of the record and the briefs, the trial court affirmed the Order finding the Board's decision was supported by reliable, probative, and substantial evidence. The trial court memorialized its decision in a Memorandum of Decision dated April 17, 1998.
The following evidence was presented at the hearing and reviewed by the trial court.
 Patient #1
In 1989, Patient #1 presented herself to appellant for a routine teeth cleaning and expressed concerns about tooth sensitivity and possible tooth decay. After his initial examination of Patient #1, appellant created a treatment plan which included urgent restorations under the crowns of six teeth, restorations on seven teeth, porcelain veneer crowns on six teeth, and periodontic treatment. Although the treatment plan did not include root canal therapy, during his treatment of Patient #1, appellant performed a total of eleven root canals and four apicoectomies on the patient.
On October 16, 1989, appellant performed extensive treatment on eight of Patient #1's teeth. Thereafter, the patient experienced throbbing pain throughout her mouth. In an attempt to treat her acute problems, appellant commenced root canal therapy on each respective tooth when it presented symptoms indicting the need for the same.
In May, 1993, Patient #1 was diagnosed with Neuralgia Inducing Cavitational Osteonecrosis ("NICO") by Dr. Carl Allen, Chairman of the Department of Oral Pathology at the Ohio State University College of Dentistry.
At the hearing, Dr. William Meyers, a renowned endodontist and former chairman of the Department of Endodontics at the Ohio State University College of Dentistry from 1976 through 1995, and current professor emeritus at the Ohio State University, testified as to the accepted standard of care in performing a root canal. Analyzing radiographs and records for each tooth enumerated in the Notice of Opportunity for Hearing, Dr. Meyers discussed appellant's failure to follow proper procedure for performing root canal therapy. Dr. Meyers acknowledged, from time to time, a practitioner might have a problem performing a root canal, however, his review of appellant's treatment revealed a pattern of sub-standard care.
Appellant presented the testimony of Dr. Carl Allen, a pathologist. Dr. Allen testified Patient #1 was referred to him for an evaluation of pain in May, 1993. After examining her, Dr. Allen concluded the patient was suffering from either a subacute osteomyelitis or NICO. Based upon his review of the pathology report, Dr. Allen opined the root canal treatments rendered on five of Patient #1's teeth comported with the accepted standard of care. Dr. Allen further stated he saw nothing in the pathology report suggesting the endodontic treatment rendered by appellant was unusual or inadequate. The doctor admitted he has never practiced endodontistry. Dr. Joel McCuen, a practicing general dentist and consultant for dental insurance companies, also testified on appellant's behalf. Based upon his review of the records and x-rays of Patient #1, Dr. McCuen opined the endodontic treatment rendered by appellant comported with the accepted standards of care of the dental profession. Dr. McCuen further stated the pathology reports of the patient substantiated his opinion. The doctor explained, even if endodontic treatment is performed completely within the standard of care, endodontic treatment is not always one hundred percent successful. In other words, properly performed root canal therapy can fail. Regarding his credentials, Dr. McCuen stated he only performed "easy" root canals, i.e., those involving single or bicuspids roots. The root canals performed on Patient #1 involved back teeth or teeth with bent or multiple canals.
 Patient #2
Patient #2 first presented herself to appellant on September 8, 1993. Appellant determined the patient needed multiple ceramic onlays. In November, 1993, appellant placed all but one of the onlays. Subsequent to the onlay treatment, Patient #2 developed severe pain in one tooth, which required multiple appointments to complete root canal therapy. This course of treatment is not at issue. Within one year of appellant's performance of the restorative treatment, the six teeth treated by appellant had open margins and lingual chips, restorations which did not properly fit causing open contact and food impaction problems, showed inappropriate signs of wear, and were missing interproximal contacts.
Dr. Donald Morgan, a general dentist specializing in restorative treatment and the subsequent treating dentist for Patient #2, testified he first examined the patient on October 3, 1994. During his initial examination of Patient #2, Dr. Morgan found chipping, broken margins, and food impaction problems. Dr. Morgan saw these problems through his visual observation of Patient #2's teeth.
Appellant refuted Dr. Morgan's testimony by claiming Patient #2 left his care before he had sufficient time to perform an overall evaluation of his work. He testified he did not have the opportunity to take radiographs, which were necessary to discover the problems. The testimony revealed the majority of the work performed by appellant on Patient #2 occurred on November 8, 1993. Appellant last examined Patient #2 on March 29, 1994. Between the time of service and the time the patient left appellant's care, appellant saw the patient approximately ten times. During those visits, appellant made adjustments to the occlusions on the teeth which necessarily required his observation of his work.
Appellant testified the deterioration of his restorations was caused by the patient's bruxing or grinding her teeth. However, Dr. Morgan concluded the patient's bruxing could not create or cause the defects in the restorations. Given appellant's knowledge of Patient #2's clenching problems, Dr. Morgan stated appellant failed to use an appropriate material for the restorations. Although appellant specifically informed Patient #2's insurance company an alloy or composite would not adequately restore her teeth, he used a composite as the material for the onlays. Dr. Morgan opined, based upon a physical and visual examination without the aid of radiographs, the restorations performed by appellant were inadequate and fell below the accepted standard of care.
Appellant also called Dr. McCuen as an expert in the case of Patient #2. Dr. McCuen testified the choice of materials alone could not fall below accepted standards of care, however, the choice of materials would have an effect on the durability and strength of the restorations. Dr. McCuen admitted the onlays placed by appellant "were less than ideal."
Appellant billed Patient #2's insurance company for the work he performed. The bills submitted to the insurance company indicated crowns were placed on seven of the patient's teeth. However, appellant placed only onlays on those teeth. Patient #2's insurance company paid appellant for crown work. Appellant admitted the error occurred, but testified said error was an innocent oversight on his part. Despite questions from the insurance company, appellant did not advise the insurance company of the error in the original bill and resubmitted the erroneous bill.
After reviewing the complete record in the matter, the trial court affirmed the Order suspending appellant's license to practice dentistry for three months, prohibiting appellant from providing endodontic treatment to patients, and requiring appellant to complete twenty hours of continuing education in ceramic restorative dentistry. The trial court found the Board's decision was supported by reliable, probative, and substantial evidence. The trial court memorialized its decision via Memorandum of Decision dated April 17, 1998. The court noted the Order turned on factual determinations regarding the weight and credibility of the witnesses who testified; therefore, the court was compelled to affirm said decision.
It is from the April 17, 1998 Memorandum of Decision appellant appeals, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN INCLUDING THAT THE BOARD'S ORDER IS SUPPORTED BY THE PREPONDERANCE OF RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
 II. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT DR. SUMMERFIELD'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS NOT VIOLATED WHEN TESTIMONY WAS PRESENTED AND THE HEARING EXAMINER CAME TO A CONCLUSION OF LAW REGARDING AN ISSUE FOR WHICH DR. SUMMERFIELD WAS GIVEN NO NOTICE.
 III. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT DR. WILLIAM'S DENIAL OF APPELLANT'S REQUEST FOR THE HEARING EXAMINER'S RECUSAL WAS NOT AN ABUSE OF DISCRETION AND A VIOLATION OF DR. SUMMERFIELD'S RIGHTS TO DUE PROCESS.
 IV. THE TRIAL COURT ERRED WHEN IT AFFIRMED THE BOARD'S ORDER BECAUSE RECORDS WERE RELIED UPON BY THE BOARD'S EXPERT WHICH WERE WITHHELD FROM THE APPELLANT, AND THEREFORE, APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED. FURTHER, THE TRIAL COURT FAILED TO ADDRESS THIS ISSUE IN ITS DECISION.
 V. THE TRIAL COURT ERRED WHEN IT AFFIRMED THE BOARD'S ORDER BECAUSE THE BOARD ERRONEOUSLY INTERPRETED THE HEARING EXAMINER'S REPORT AND/OR FAILED TO READ IT. THE BOARD'S CONCLUSIONS ARE NOT CONSISTENT WITH ITS IMPOSED SANCTIONS. THE BOARD'S MODIFICATION OF THE SANCTION RECOMMENDED BY THE HEARING EXAMINER WAS ARBITRARY AND CAPRICIOUS. FURTHER, THE TRIAL COURT FAILED TO ADDRESS THESE ISSUES IN ITS DECISION.
 VI. THE TRIAL COURT ERRED WHEN IT AFFIRMED THE BOARD'S ORDER BECAUSE THE HEARING EXAMINER ERRED BY ALLOWING A WITNESS (PATIENT 1), TO WHICH A RULING TO SEPARATE WITNESSES APPLIED, TO REMAIN IN THE ROOM DURING THE HEARING. THE TRIAL COURT FAILED TO ADDRESS THIS ISSUE IN ITS DECISION.
 STANDARD OF REVIEW
In an appeal from a State Dental Board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12; Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. An appellate court's review is even more limited than that of the trial court. Id. While it is incumbent on the trial court to examine the evidence, the appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court." Id. Instead, the appellate court must affirm the trial court's judgment. Id.
(Citations omitted).
In Pons, supra, the Ohio Supreme Court held:
 Moreover, when reviewing a medical [or dental] board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168: `* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * * '(Quotation omitted).
Id. at 621-622.
Therefore, absent an abuse of discretion of the trial court, this Court must affirm the trial court's judgment.
 I
In his first assignment of error, appellant contends the trial court erred in concluding the Order was supported by reliable, probative, and substantial evidence. Specifically, appellant attacks the evidence relied upon by the Board to support its finding appellant's treatment of Patient #1 and Patient #2 fell below the appropriate standard of care as well as its finding appellant violated R.C. 4715.30(A)(5) for inappropriate billing.
Regarding the finding relative to Patient #1, appellant argues the patient's testimony was inconsistent and impeached by the records admitted into evidence. Appellant further argues the testimony of the Board's expert witness, Dr. Meyers, was contradicted by the testimony of appellant's two experts. Regarding the findings relative to Patient #2, appellant did not dispute the condition of the restorations when Dr. Morgan examined the patient approximately eight months after he last saw her. However, appellant disagreed with the point in time which the onlays became defective, and argued he was not given an opportunity to perform a comprehensive post-restorative examination because the patient did not return for a subsequent recall appointment. Regarding the finding appellant inappropriately billed and was paid by Patient #2's insurance company, appellant emphasizes his testimony he wrote the correct CDT for ceramic onlays in Patient #2's dental chart, however, his billing clerk inadvertently billed the insurance company for crowns.
In essence, appellant asks this Court to re-weigh the evidence presented to the hearing officer and find his testimony and the testimony of his witnesses more credible than the testimony of the Board's expert and lay witnesses. However, this Court may not engage in this kind of exercise. Evaluating evidence and weighing credibility are primarily for the trier of fact. Hoitt v. Siefer (1995), 105 Ohio App.3d 104, 107 (Citation omitted). We may only decide if the trial court abused its discretion by finding the Order is supported by reliable, probative, and substantial evidence.
Appellant was charged with two counts of providing "dental care that departs from or fails to conform to accepted standards for the profession, whether or not injury to a patient results." R.C. 4715.30(A)(7). Appellant was also charged with "obtaining or attempting to obtain money or anything of value by intentional misrepresentation or material deception in the course of practice." R.C. 4715.30(A)(2).
At the hearing, the Board presented the testimony of three expert witnesses. Each expert testified, in his opinion, the treatment provided by appellant to the patients violated the accepted standards of care for the dental profession. The patients themselves also testified regarding appellant's treatment and the subsequent problems associated with said treatment. The hearing examiner and the Board, as the triers of fact, were entitled to place more credence in the Board's experts' testimony than in the testimony presented by appellant and his experts. As such, the findings of the Board appellant violated R.C.4715.30(A)(7) with regard to Patient #1 and violated R.C.4715.30(A)(7) and (2) with regard to Patient #2 are supported by reliable, probative, and substantial evidence. We find the trial court did not abuse its discretion by so determining.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in concluding the Notice of Opportunity for Hearing was "sufficiently detailed to apprise appellant of the charges filed against him and the factual basis underlying those charges." Specifically, appellant submits he was given no notice regarding his failure to appropriately refer Patient #1.
The trial court found, "The Notice of Opportunity for Hearing originally sent to Appellant is sufficiently detailed to apprise the Appellant of the charges filed against him and the factual basis underlying those charges." Decision at 2. The trial court noted the patients were identified, the teeth numbers identified, the problems created by the improper treatments were identified, and the procedures relating to the questionable billing identified. Additionally, the notice set forth the code sections alleged to have been violated by appellant.
The basis of the complaint relative to Patient #1 centered around appellant's performing endodontic treatment in a substandard manner. Although appellant contends his failure to refer Patient #1 should not have been before the Board, appellant himself made an issue of the patient's affliction with NICO, blaming said condition for his improper treatment of the patient. Having raised Patient #1's NICO as a defense to his failure to properly treat her, the Board had a right to present evidence in response. Because appellant raised the issue, he cannot claim his due process rights were violated. Accordingly, we find the trial court did not err in determining the notice was sufficient.
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant asserts the trial court erred in concluding the denial of his request for the hearing examiner's recusal by the Secretary of the Board, Dr. Williams, was not an abuse of discretion and was not a violation of his rights to due process.
 In West Virginia v. Ohio Hazardous Waste (1986), 28 Ohio St.3d 83, the Ohio Supreme Court held:
 It is well-settled that a reviewing court must presume that the decision of an administrative agency is valid and was reached in a sound manner * * * This presumption imposes upon appellants the burden of proving their contention that the hearing examiner in this cause was biased, partial or prejudiced to such a degree that his presence adversly affected the board's decision.
Id. at 86 (Citations omitted).
In the instant action, counsel for appellant requested the matter be assigned to another hearing examiner due to counsel's belief the appointed hearing officer held a personal bias and prejudice against him. Dr. Williams denied appellant's request for a new hearing officer, indicating the selected examiner worked successfully with the Board in the past and the Board was confident the hearing examiner would address any impartially problems he believed existed.
Appellant argues this unilateral denial by the secretary violated his right to procedural due process. We, like the trial court, find appellant failed to set forth specific facts supporting his allegations of bias and prejudice by the hearing officer. We agree with the trial court, "To simply state such bias and prejudice exist is not enough to destroy due process and warrant a recusal." Decision at 6. Appellant has the burden of proving the hearing examiner was "bias, partial, or prejudiced to such a degree his presence adversly affected the board's decision." We find appellant has failed to satisfy this burden. We further find the trial court did not err in concluding the Board's denial of appellant's request for the hearing examiner's recusal was not an abuse of discretion.
Additionally, appellant argues a full Board was required to rule on his motion. R.C. 4715.03 does not provide for such a procedure. The assignment of all pre-hearing motions to one board member is admistrative and serves to expedite the hearing process. We find the appointment of the Secretary of the Board to rule on all pre-hearing motions to be an appropriate delegation of duties.
Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant submits the trial court erred in affirming the Order because the Board's expert relied upon records which were withheld from appellant. Appellant notes the trial court failed to address this issue in its decision. During the hearing, while discussing appellant's care and treatment of tooth 15 of Patient #1, Dr. Meyers relied upon and testified relative to an x-ray taken in June, 1993. Off the record, counsel for the parties had an extensive discussion and reviewed all of the exhibits to assure the x-rays upon which Dr. Meyers based his opinion were taken by appellant. After reviewing the exhibits, the parties found only the June, 1993 x-ray was not taken by appellant. In order to keep the record clear, counsel for the Board stated she would not move to enter the x-ray into evidence. Subsequently, Dr. Meyers was shown another x-ray of tooth 15 from which he opined appellant's care and treatment of said tooth was below the accepted standard of care.
In light of the fact the x-ray which was not taken by appellant was withdrawn and never entered into evidence, and the fact Dr. Meyers was able to draw the same conclusions using previously identified x-rays, we find the trial court did not err in affirming the Order even though appellant did not have the June, 1993 x-ray prior to the hearing.
Appellant's fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant argues the trial court erred in affirming the Order because the Board erroneously interpreted the hearing examiner's Report.
R.C. 119.09 provides, in part:
 The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval.
(Emphasis added).
The hearing examiner recommended appellant's license be suspended for a period of six months with said suspension abated upon appellant's taking sufficient continuing professional education in endodontics and practice management to satisfy the Board he was qualified to continue to provide endodontic treatment. The Board amended the hearing officer's recommendations. The Board ordered appellant's license to practice dentistry be suspended for a period of three months. The Board also ordered appellant be permanently prohibited from engaging in providing endodontic treatment. Appellant was ordered to complete twenty hours of continuing education in ceramic restorative dentistry.
Because the Board modified the hearing officer's recommendations, the Board is required pursuant to R.C. 119.09 to state its reasons for such modification. At the September 10-11, 1997 board meeting, the Board discussed its reasons for the modification. Regarding the modification of the license suspension, the Board determined appellant might not have a practice to return to if a six month suspension was imposed. Because appellant was barred from practicing endodontics and would be taking continuing education courses, the Board believed the public would be sufficiently protected against substandard care. Regarding the decision to prohibit appellant from practicing endodontics, the Board found appellant should have referred his patients to dentists who could provide proper root canal care if he was unable to perform such therapy to the acceptable standard of care. The Board expressed it concerns regarding appellant's restorative practice and appellant's need for further education in that area.
By enacting R.C. 4715.30, the General Assembly granted the Board a broad spectrum of sanctions from which to choose. The choice of which sanction to impose is within the discretion of the Board. In re: Jones (1990), 69 Ohio App.3d 114, 121. (Citation omitted).[1] In the instant action, the sanctions imposed upon appellant were within the range of sanctions authorized under R.C. 4714.30(C). Accordingly, we find the Board did not abuse its discretion in amending the hearing examiner's recommendation.
Furthermore, "if the penalty imposed is within the scope of the authority granted to the administrative agency, the judiciary cannot reverse, vacate or modify it." Conners v. Ohio Dept. ofCommerce, Div. of Real Estate (1982), 7 Ohio App.3d 237, 238-239
(Citation omitted). Because the trial court did not have the authority to reverse, vacate or modify the Order, we find the trial court did not err in affirming said order.
Appellant's fifth assignment of error is overruled.
 VI
In his final assignment of error, appellant claims the trial court erred in affirming the Order because the hearing examiner allowed Patient #1, who was called as a witness, to remain in the hearing room despite an order of separation of witnesses. Appellant submits the trial court failed to address this issue in its Decision.
After testifying at the hearing, Patient #1 appeared on a subsequent day in order to listen to further testimony in the case. Appellant objected to her presence. Appellant argued because of the existence of an order of a separation of witness and the fact he could potentially call her as a witness, the patient should be excluded from the hearing room. Patient #1 told the hearing examiner she did not recall receiving a subpoena from appellant or appellant's counsel. The hearing officer overruled appellant's objection and allowed the patient to remain in the hearing room.
When Patient #1 appeared at the hearing after giving her testimony, she was not named on the remaining witness list given to the hearing examiner by appellant. Appellant did not call the patient as a witness.
Because the patient was not one of appellant's remaining witnesses, we find the hearing officer did not err in allowing her to remain in the hearing room. Furthermore, we find appellant has failed to show he was prejudiced by Patient #1's presence.
Appellant's sixth assignment of error is overruled.
The judgment entry of the Licking County Court of Common Pleas is affirmed.
By: Hoffman, J., Farmer, P.J. and Gwin, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment entry of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] This case involves disciplinary action taken by the Ohio State Medical Board pursuant to R.C. 4731.22, which is similar to R.C. 4715.30.