REVISED OCTOBER 5, 2007
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 28, 2007

Charles R. Fulbruge III
Clerk

No. 06-30570

CONSOLIDATED COMPANIES INC

Plaintiff-Appellee

v.

UNION PACIFIC RAILROAD CO, Individually & in its Capacity as
Successor in Interest, aka Southern Pacific Transportation Co

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this case we granted an interlocutory appeal by Union Pacific Railroad Co. ("Union Pacific") under 28 U.S.C. § 1292(b) to determine whether the district court erred in defining the term "facility" for purposes of the claims brought by Consolidated Companies, Inc. ("Conco") under the Resource Conservation Recovery Act "RCRA", 42 U.S.C. §§ 6901, et seq., and the Louisiana Environmental Quality Act ("LEQA"), Louisiana Revised Statutes 30:2001, et seq. Finding no error in the district court's ruling, we affirm.

I

Conco owns a parcel of property located on the southeast Evangeline Thruway in Lafayette, Louisiana ("Conco tract"). Conco purchased the Conco tract in 1964 from the predecessor in interest of Union Pacific, the Southern Pacific Company ("Southern Pacific"). Prior to that time, the Conco tract, along with several other contiguous parcels of property, composed Southern Pacific's railroad yard ("former railroad site").[1] Railroad activities were conducted on this site for approximately thirty years, ceasing in the mid-1960s. Union Pacific later merged with Southern Pacific and, for purposes of this case, assumed the obligations and liabilities, if any, of Southern Pacific.

Conco operates a food warehouse and distribution facility on the Conco tract. In 1996, Conco discovered contamination, including fuel oil, on the Conco tract, which it alleges is the result of the prior railroad operations. Conco brought suit against Union Pacific, pleading causes of action under the RCRA, the LEQA, and various tort-based theories. Conco sought monetary damages and injunctive relief directing Union Pacific to clean up contamination on the entire former railroad site. Initially, the allegations in Conco's complaint only related to the Conco tract. However, Conco was later permitted to amend its complaint to include allegations and requests for relief addressing the entire site.

Upon agreement of the parties, the district court held a bench trial under Federal Rule of Civil Procedure 42(b) on the limited issue of whether the contiguous parcels of property that make up the former railroad site can constitute a single "facility" for purposes of Conco's claims under the RCRA and

---

[1] These additional contiguous tracts are identified as: (1) the Georgia Pacific parcel located at 814 Southwest Evangeline Thruway; (2) the PMT parcel located at 810 Southwest Evangeline Thruway; and (3) the P.J.A. Properties, Inc. site at 600-602 Southwest Evangeline Thruway. The Georgia-Pacific parcel was purchased by Georgia-Pacific Corporation from Southern Pacific in 1966. The PMT parcel is still owned by Union Pacific.

the LEQA. For purposes of this limited trial, Union Pacific stipulated that contamination from pre-1964 railyard operations is present on the Conco tract and that Conco can bring suit under the RCRA and the LEQA with respect to that tract. However, Union Pacific argued that: (1) Conco did not have standing to include in its suit the other contiguous tracts that compose the former railroad site and are not owned by Conco; and (2) under the RCRA and the LEQA, a "facility" cannot be composed of the entire former railroad site but instead must be limited to the Conco tract.

In its interlocutory judgment filed after the conclusion of the bench trial, the district court made several findings of fact, including: (1) that the former Southern Pacific railroad site included a 35,000 gallon and a 30,000 gallon above ground fuel oil tank and that oil, fuel, and dynamite were stored throughout the site; (2) that numerous pipelines, wells and drains traversed the site during its active use as a railyard; (3) that a 1996 preliminary subsurface investigation on the Conco tract in the area of the 35,000 gallon fuel oil tank revealed fuel oil contamination in the subsurface soil and the groundwater, which is undoubtedly linked to the operations of the railroad yard; (4) that other contamination related to or arising out of the railroad operations, including contaminants, pollutants, hazardous wastes and/or hazardous substances as defined by law, has been discovered throughout the former railroad site at various times by various consultants; and (5) as early as 1990 or 1991, Union Pacific was aware of the presence of hazardous wastes and/or hazardous substances at, on, or under the former site and in the groundwater at various parcels.[2] Further, the district court held that: (1) Conco has constitutional standing to bring its claims under both the RCRA and the LEQA; and (2) the entire former Southern Pacific

_____

[2] The district court's factual findings are not at issue in this interlocutory appeal, in which we review only the district court's purely legal rulings. See Kinney v. Weaver, 367 F.3d 337, 347 n.9 (5th Cir. 2004) (citing Johnson v. Jones, 515 U.S. 304, 313-17, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995)).

railroad site can constitute a single "facility" for purposes of Conco's RCRA and LEQA claims. Union Pacific filed a Petition to Appeal the interlocutory order under 28 U.S.C. § 1292(b), which was granted by this Court.

On appeal, Union Pacific renews its arguments that: (1) Conco does not have standing to bring its claims under the RCRA and the LEQA because it has not demonstrated an "injury in fact" sufficient to meet the requirements of Article III, § 2 of the United States Constitution; and (2) that the district court erred in holding that the entire former railroad site can constitute a single "facility" for purposes of Conco's RCRA and LEQA claims.

## II

Union Pacific first argues that Conco does not have standing to bring its claims under the RCRA and the LEQA because it has not demonstrated an "injury in fact" sufficient to meet the requirements of Article III, § 2 of the United States Constitution. As Union Pacific correctly notes, the citizen suit provisions of the RCRA and the LEQA do not, in and of themselves, satisfy the case-in-controversy requirement of Article III, § 2. Lujan v. Defenders of Wildlife, 504 U.S. 555, 571-72 (1992). In order to demonstrate standing, a plaintiff must show: (1) that it has suffered an "injury in fact" that is (2) fairly traceable to the challenged action of the defendant and (3) the likelihood that the injury can be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan, 504 U.S. at 560-61). An "injury in fact" must be both concrete and particularized and must be either actual or imminent. Friends of the Earth, 528 U.S. at 180-81.

We find that Conco has demonstrated an "injury in fact" sufficient for purposes of constitutional standing. Conco has produced evidence that contaminants are present in the soil throughout the entire former railroad site, including the Conco tract. Union Pacific has conceded that these contaminants

4

are present due to the former railroad activities conducted by its predecessor-in-interest, Southern Pacific. Further, based on the presence of these contaminants, Conco is currently under Louisiana Department of Environmental Quality ("LDEQ") orders to monitor the area bordering the Georgia Pacific tract. Conco has already incurred and continues to incur costs for its performance of these required monitoring efforts. Recovery of these costs is one of Conco's objects in its suit against Union Pacific. These injuries are clearly actual, concrete, and particularized. Id.

Union Pacific argues that Conco's injuries only give it standing to bring suit based on the parcel of the former railroad site that Conco owns. However, Union Pacific has not provided any compelling legal basis for so limiting Conco's standing. Conco's injuries, as reflected in the district court's factual findings, arose out of the railroad activities that were conducted throughout the entire former railroad site. Further, Conco has introduced evidence demonstrating that the contaminants on the non-Conco tracts may pose further threatened harm to Conco. An expert witness testified that the contaminants on the non-Conco tracts may have already migrated to the Conco tract or may so migrate in the future. The Supreme Court has consistently held that threatened harm can constitute an injury in fact. See Lujan, 504 U.S. at 571-72.

Additionally, Conco has submitted evidence showing that the City of Lafayette's water supply, the Chicot aquifer, lies beneath the land surface at issue. An expert witness testified that the toxic contaminants located throughout the former railroad site may have migrated into the water supply. Conco's employees, like the citizens of Lafayette generally, drink the water supplied by this aquifer and, therefore, have been or will be injured by any pollution of the aquifer.[3] Given this evidence, we hold that Conco's injuries, both

---

[3] Data that would allow definitive determination as to whether the contaminants have polluted or will soon pollute the water supply is not available. However, expert testimony,

actual and threatened, are sufficiently related to the former railroad site so as to give Conco standing to bring claims implicating the site in its entirety. See id. at 560-61.

## III

Union Pacific also argues that the district court erred in holding that the entire former railroad site can comprise a single "facility" for purposes of Conco's claims under the RCRA. Union Pacific contends that only the Conco tract can legally be considered as a "facility" under the RCRA. Conco brings suit under § 6972(a)(1)(B), commonly referred to as the citizens suit provision of RCRA, which provides that "any person may commence a civil action on his own behalf," thereby empowering a plaintiff to act, in effect, as a private attorney general on behalf of citizens. See Prisco v. A & D Carting Corp., 168 F.3d 593 (2d. Cir. 1999). In order to prevail under this section, a plaintiff must establish the following elements:

> 1. The defendant is a person, including, but not limited to, one who was or is a generator of solid or hazardous waste, or one who was or is an owner or operator of a solid or hazardous waste treatment, storage or disposal facility.
> 2. The defendant has contributed to, or is contributing to, the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and
> 3. The solid or hazardous waste may present an imminent and substantial endangerment to human health or the environment.

42 U.S.C. § 6972(a)(1)(B) (emphasis added). Although the term "facility" is employed throughout the RCRA, it is not specifically defined in § 6909, the act's definition section. However, "facility" is defined in § 6991b(h)(6)(D), a section of the RCRA that addresses claims relating to underground storage tanks. This section reads:

---

credited by the district court, established that Union Pacific has neither fully complied with LDEQ testing efforts on the property it still owns nor permitted Conco to conduct testing beyond the Conco tract.

"For purposes of this paragraph, the term "facility" means, with respect to any owner or operator, all underground storage tanks used for the storage of petroleum which are owned or operated by such owner or operator and located on a single parcel of property (or on any contiguous or adjacent property)."

42 U.S.C. § 6991b(h)(6)(D) (emphasis added).

"Facility," then, is defined in the RCRA in a manner that is inclusive of contiguous or adjacent tracts of property. It is a well accepted rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." Commissioner v. Lundy, 516 U.S. 235, 250, 116 S. Ct. 647, 133 L. Ed.2d 611 (1996); see also Cox v. City of Dallas, 256 F.3d 281, 293 n.22 (5th Cir. 2001). The definition of "facility" in § 6991b(h)(6)(D) is particularly instructive of how the term should be interpreted in the instant case because the contexts in which the term is used are quite similar. In § 6991b(h)(6)(D), "facility" is defined in relation to property on which underground storage tanks are present. In the case before us, at issue is the appropriate boundary of a "facility" with respect to the former railroad site, upon which above ground storage tanks were located. That the definition of the term would be consistent between such similar contexts is logically compelling.

"Facility" is also defined in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), which shares a similar legislative purpose with the RCRA. The RCRA, in fact, calls upon the Administrator of the Environmental Protection Agency (EPA) to integrate the provisions of the RCRA with those of CERCLA in a manner consistent with the goals and policies expressed in each act. See 42 U.S.C. § 6905. In § 9601(9), CERCLA defines "facility" as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). In Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572-74 (5th Cir. 1998), we read this definition as leaving "no room for

7

doubt" that an entire development, rather than the individual parcels of property owned by the private citizens, constituted a "facility" under CERCLA. In doing so, we explained that the statutory definitions in "§ 6972 [of the RCRA] are the same as the definitions in CERCLA." Id. at 1574. It is the clear guidance of Tanglewood, then, that we let the inclusive definition of "facility" found in CERCLA inform our interpretation of the term as it is employed in § 6972 of the RCRA.[4]

The legislative purpose behind the RCRA is also instructive. The RCRA "'is a multifaceted approach toward solving the problems associated with the three-four billion tons of discarded materials generated each year.'" Cox, 256 F.3d at 295 n.24 (quoting H.R. Rep. No. 94-1491, Part I, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 6238, 6239). "Congress believed that by giving citizens themselves the power to enforce [RCRA] provisions by suing violators directly, they could speed compliance with environmental laws, as well as put pressure upon a government that was unable or unwilling to enforce such laws itself." Greenpeace, Inc. v. Waste Techs. Indus., 9 F.3d 1174, 1179 n.2 (6th Cir. 1993)(citing H.R. Rep. No. 98-198, Part I, at 53 (1983), reprinted in 1984 U.S.C.C.A.N. 5576, 5612). Congress expressly intended the RCRA to "close loopholes in environmental protection." United States v. Waste Indus., Inc., 734 F.2d 159, 165 (4th Cir. 1984).

When read in light of its legislative intent, it is clear that the correct interpretation of the term "facility" in § 6972(a)(1)(B) is one that encompasses the entire former Southern Pacific railroad site. For the construction of "facility" advanced by Union Pacific, one that would divide the former railyard into

---

[4] Union Pacific attempts to distinguish Tanglewood on the ground that the "facility" at issue there was a residential subdivision, rather than an industrial facility. However, as neither the RCRA nor CERCLA distinguish residential from commercial or industrial "facilities," this is a difference without legal distinction under the statutes.

several separate facilities along current property lines, would require a plaintiff to bring numerous suits to effectuate the remediation of one large, discrete pollution source. Such a result would slow, rather than speed, compliance with environmental laws, and open, rather than close, a loophole in environmental protection. It also defies common sense; if a single source of contaminants, like the former railroad site, is to be adequately cleaned up, it must be done in a comprehensive fashion. To remove the hazardous elements from only the Conco tract would still leave that land vulnerable to the migration of the toxic elements remaining just beyond its property line. Union Pacific's proffered construction of "facility", then, is neither pragmatic nor consistent with Congressional intent.

Union Pacific also contends that the "facility" should be limited to the Conco tract under the RCRA because Conco does not own the other tracts that make up the former railroad site. However, nothing in the RCRA prevents a plaintiff from bringing a suit implicating a facility in which he lacks a complete or even a partial ownership interest. See § 6972(a)(1)(B). Indeed, we have allowed such suits under the RCRA. See, e.g., Cox, 256 F.3d at 281 (allowing RCRA suit by homeowners for cleanup of landfill facility in which plaintiffs had no ownership interest); Such an approach is simply part-and-parcel with expansive private attorney general provisions like that included by Congress in § 6972(a)(1)(B). Accordingly, we find no reason to limit the definition of "facility" on this basis.

For the foregoing reasons, we hold that the district court correctly determined that under § 6972(a)(1)(B) of the RCRA, the term "facility" can encompass the entire former railroad site.

IV

9

Union Pacific similarly argues that the district court erred in holding that the entire former railroad site can compose a "facility" for purposes of the LEQA. Again, Union Pacific contends that under the LEQA, a "facility" must be limited to the Conco tract. The LEQA's citizen suits provision provides that "any person having an interest, which is or may be adversely affected, may commence a civil action on his own behalf against any person whom he alleges to be in violation of this Subtitle II [of Title 30] or of the regulations promulgated hereunder." La. R.S. 30:2026(A)(1). In its complaint, Conco alleges, in part, that Union Pacific violated § 2273 because it (1) was an owner and/or operator of "a pollution source or facility"; and/or (2) "generated a hazardous waste which was eventually transported, stored, disposed of or discharged at a pollution source or facility"; and/or (3) "disposed of or discharged a hazardous substance at a pollution source or facility." La. R.S. 30:2273. In § 2004(14), the term "facility" is defined, for purposes of the citizen suits provision, as:

> [A] pollution source or any public or private property or facility where an activity is conducted which is required to be regulated under this Subtitle and which does or has the potential to do any of the following:
> (a) Emit air contaminants into the atmosphere.
> (b) Discharge pollutants into waters of the state.
> (c) Use or control radioactive materials and waste.
> (d) Transport, process, or dispose of solid wastes.
> (e) Generate, transport, treat, store, or dispose of hazardous wastes.

La. R.S. 30:2004(14). In turn, § 2004(13) defines "pollution source" as:

> [T]he immediate site or location of a discharge or potential discharge, including such surrounding property necessary to secure or quarantine the area from access by the general public.

La. R.S. 30:2004(13) (emphasis added). Conco alleges, and the district court itself found, that pollutants and hazardous waste are located throughout the entire former railroad site, clearly qualifying it as a "pollution source" under § 2004(13). Further, the facts found by the district court demonstrate that each

tract composing the former railroad site has the potential to discharge pollutants into the Chicot aquifer and that both existing conduits and groundwater could further spread the contaminants beyond the site. These facts qualify the former site as a "facility" under § 2004(14)(b) and (c).

Although Union Pacific nevertheless contends that the "facility" must be limited to the property boundaries of the Conco tract, the language of LEQA itself clearly suggests otherwise. By its plain terms, § 2004(13) defines "pollution source" so expansively that the term can encompass not only the entire location of a discharge of contaminants (such as the former railroad site) but the surrounding property as well. This statutory language appears to reflect a legislative choice to prioritize the thorough remediation of environmental hazards over more narrow observation of property lines. This approach is employed elsewhere in the LEQA as well. See La. R.S. 30:2204(c) (specifying that a "hazardous waste site" includes "the entire contaminated area and may extend beyond a facility's boundary). In short, nothing in the LEQA suggests that a "facility" must be limited to the property lines of the Conco tract. Accordingly, we hold that the district court did not err in determining that the entire former railroad site can constitute a "facility" for purposes of Conco's LEQA claims.[5]

V

For the foregoing reasons, we AFFIRM.

---

[5] Union Pacific also contends that Conco cannot bring suit under LEQA § 30:2026 because it does not have an "interest which is or may be adversely affected." Clearly, the evidence in the record demonstrates (at a minimum) that Conco's interest in the Conco tract and its interest in the safety of its employees' drinking water may be adversely affected by the contamination located throughout the former railroad site. Accordingly, Union Pacific's argument on this issue fails.

11