St. Augustine Catholic Church, Appellee, *v.*
Attorney General of Ohio,
Charitable Foundations Section, Appellant.

[Cite as St. Augustine Catholic Church v. Atty. Gen. (1981),
67 Ohio St. 2d 133.]

(No. 80-1471—Decided July 8, 1981.)

*Connor & Zatezalo Co., L.P.A., Mr. John A. Connor, II,* and *Mr. Darrell E. Fawley, Jr.,* for appellee.

*Mr. William J. Brown,* attorney general, and *Ms. Diane M. Weaver,* for appellant.

SWEENEY, J. The sole issue presented is whether, pursuant to R. C. 2915.08, the Attorney General is under a mandatory duty to reject an application for a bingo license where there is undisputed evidence of past violations of the Charitable Bingo Act by the applicant.

St. Augustine acknowledges that, during the period of its licensure, its bingo operations were conducted in less than full compliance with all aspects of the Charitable Bingo Act. It argues, however, that circumstances significantly changed shortly after the retirement and replacement of the incumbent

parish priest by Reverend Colby Grimes on July 11, 1978. St. Augustine points to Reverend Grimes' seven years of satisfactory bingo administration experience, and the replacement in mid-July, 1978, of St. Augustine's bingo operator (who was convicted of embezzlement, a felony, in 1963) with a new and experienced bingo operator. Appellee also asserts that a new record-keeping system would be implemented were a new license granted. St. Augustine asserts these circumstances justify the conclusion that it now meets all requirements for issuance of a license, and would operate in full compliance with the Charitable Bingo Act, were a license to be issued.

The Attorney General argues, on the other hand, that he is forever barred from issuing a bingo license to an organization which has previously violated any provision of R. C. 2915.07 through 2915.11. The Attorney General bases this contention on his interpretation of R. C. 2915.08(B) which, in pertinent part, provides:

"***The attorney general *shall refuse to grant a bingo license to any organization* or revoke the license of any organization that:

"(1) *Fails* to meet any requirement of sections 2915.07 to 2915.11 of the Revised Code;

"(2) *Makes* an incorrect or false statement in an application filed pursuant to division (A) of this section;

"(3) *Submits* any incorrect or false information relating to the application;

"(4) *Maintains* any incorrect or false information in the records required to be kept pursuant to division (A) of section 2915.10 of the Revised Code." (Emphasis added.)

As noted by the Court of Common Pleas, however, the Attorney General's interpretation unnecessarily reads into the statute a mandatory obligation to reject a license application in every case where the applicant *"has* failed" (rather than "fails") to meet statutory requirements.

In rejecting the Attorney General's position, the Court of Appeals commented:

"The Attorney General construes the present-tense terminology of R. C. 2915.08(B) to include the past tense as well. ***On the contrary, R. C. 1.43(C) as to statutory construction states that: 'Words in the present tense include the

future.' There is no indication that use of the present tense includes the past. Accordingly, the determination to be made by the Attorney General is whether at the time of the application, or during the period of the license, the applicant does, or will, fail to meet the requirements specified in R. C. 2915.08(B).

"The fact that an applicant in the past failed to meet the requirements of R. C. 2915.08(B) does not mandate a finding that such applicant presently fails to meet those requirements or will fail to meet those requirements during the period for which the license is requested. On the other hand, past action constitutes evidence of probable future action. Accordingly, the Attorney General properly may consider evidence of past violations for failure to comply with the Charitable Bingo Act as evidence indicative of probable future action by the same applicant. On the other hand, the applicant may present evidence to demonstrate that it has corrected its past deficiencies, that they do not presently exist and will not be repeated in the future. If despite past violations the Attorney General finds that the present and future actions of the applicant will be in accordance with the Charitable Bingo Act, a license may be granted to the applicant despite the past violations. The existence of the past violations does not constitute a bar to the issuance of a license but, rather, only evidence to be considered in determining whether the applicant presently is qualified for a license, to be considered together with all of the other evidence upon that issue by the Attorney General in making the requisite factual findings required by R. C. 2915.08(B)."

We concur in the lower courts' reasoning.

The Attorney General argues that, under such an analysis, he may deny a bingo license application only where he first satisfies the nearly impossible burden of proving that the applicant will violate the Act in the future. The Attorney General interprets the foregoing reasoning to mean that "[a]bsent a present violation, a license must issue unless the Attorney General can demonstrate both prior and future noncompliance with the Act."

As the bingo licensing authority, the Attorney General is, pursuant to R. C. 2915.08(B), under a mandatory duty to reject a license application where he, as fact-finder, determines

that the applicant "fails" to comply with the requirements of law for the issuance of such a license. His factual determinations are then subject to appellate review as to whether they are supported by "reliable, probative, and substantial" evidence. R. C. 119.12; *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108. Our holding herein does not in any way alter evidentiary burdens of proof or shift the burden away from the applicant to show that it is entitled to a license. It does no more than hold that the fact that an applicant for a bingo license has at some time in the past been in violation of the Charitable Bingo Act does not, standing alone, constitute irrebuttable evidence that the applicant is not entitled to a license. Where a history of non-compliance with law is shown, and absent evidence of the implementation of corrective measures, the Attorney General may factually conclude that such noncompliance is of a continuing nature, and presently occurring, thus disqualifying the applicant from a license. In some cases, he may find that what are asserted to be corrective measures constitute no more than a sham. Of course, if a license is issued to an organization with a history of a prior violation which makes an adequate showing of the implementation of corrective measures, and thereafter the organization reverts to prior unsatisfactory practices or lapses into noncompliance, the Attorney General may initiate license revocation proceedings. R. C. 2915.08(B).

It is unreasonable to believe that a charitable organization is incapable of correcting past deficiencies and bringing itself into compliance with law. Absent express statutory direction, we refuse to hold that proof of prior violations forever disqualifies a charitable organization from holding a bingo license under the Charitable Bingo Act.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, LOCHER, HOLMES and C. BROWN, JJ., concur.