JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant Advanced Medical Systems, Inc ("AMS") appeals from the decision of Cuyahoga County Common Pleas court that affirmed the Ohio Department of Health's ("ODH") order denying AMS' application to renew its Ohio Radioactive Materials License. For the reasons that follow, we affirm.
 {¶ 2} AMS previously obtained a radioactive materials license that permitted operation of a teletherapy unit that contains Cobalt-60, a radioactive substance. AMS initially filed its renewal application with the United States Nuclear Regulatory Commission ("NRC"). During the pendency of its application, NRC transferred license and regulatory authority of radioactive materials to the Ohio Department of Health. ODH required AMS to submit an original renewal application including a decommissioning funding plan.[1]
 {¶ 3} Upon receiving jurisdiction over AMS' renewal application, ODH expressed concern about the possible contamination of the soil beneath the waste hold-up tank room ("WHUT" room) located in the basement of the facility. It is undisputed that the WHUT room itself is contaminated. At least one of AMS' witnesses acknowledged that there could be some cracks in the WHUT room floor.[2] (Tr. 64-66). ODH requested various information from AMS to alleviate this concern. In particular, ODH informed AMS of its recommendation to deny the application unless AMS either demonstrated that the soil beneath the WHUT room basement was not contaminated with Cobalt-60, or provide for the area's decommissioning in AMS' decommissioning funding plan. (R. 6, Exh. 1).
 {¶ 4} In response, AMS supplied water sample tests that it alleges did not indicate contamination above the regulated levels. Direct samples of the soil were not taken on the advice that drilling holes in the contaminated WHUT room basement floor would create a passage for direct contamination of the soil.
 {¶ 5} The Director of ODH proposed to deny AMS' application for a renewal license for failure to adequately respond to the ODH requests detailed above. AMS appealed and a hearing ensued before the ODH. At the hearing, AMS presented the testimony of two witnesses who both opined that the soil beneath the WHUT room basement floor was not contaminated based upon the water sample tests. However, both conceded that contamination could not be ruled out. (Tr. 108, 160). Nonetheless, AMS determined not to allocate a specific line item in its decommission funding plan for decommissioning the soil beneath the WHUT room basement floor.
 {¶ 6} The Hearing Examiner issued a report, including findings of fact and conclusions, that affirmed the denial of AMS' application for a renewal license. AMS filed several objections to that report, which ODH addressed and overruled in a detailed journal entry. ODH then adopted the Hearing Examiner's report and denied AMS' application to renew its Ohio Radioactive Materials License. From that decision, AMS appealed to the Cuyahoga County Court of Common Pleas. The trial court affirmed the ODH order based on its finding that reliable, probative and substantial evidence in the record supported the ODH's decision. From that decision, AMS appeals to this Court assigning the following error for our review:
 {¶ 7} "I. The lower court erred in holding that appellee's denial of appellant's Ohio Radioactive Materials License was based on reliable, probative and substantial evidence."
 {¶ 8} The provisions of R.C. 119.12 govern our review of appeals from administrative agencies such as the ODH. The statute provides for limited appellate review, as follows:
 {¶ 9} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." Id.
 {¶ 10} The Ohio Supreme Court has elaborated on the meaning of these terms: "(1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Our Place, Inc. v. OhioLiquor Control Commission (1992), 63 Ohio St.3d 570, 571.
 {¶ 11} With this standard in mind, we have reviewed the record and conclude that the trial court's determination, like the ODH order, is based on some reliable, probative and substantial evidence in the record.
 {¶ 12} The uncontroverted evidence establishes that the WHUT room is contaminated, there are cracks in the basement floor, and a 1999 inspection discovered a tree on the premises contaminated with Cobalt-60.
 {¶ 13} ODH gave AMS an option to either rule out contamination in the soil beneath the WHUT room basement floor or allocate money in its decommissioning funding plan. AMS determined not to drill holes in the WHUT room basement floor to obtain actual soil samples on the advice that this would create a direct passage for contaminants from the WHUT room to the soil. However, AMS contends that because it presented evidence and testimony to the effect that it was unlikely that the soil was contaminated based upon testing of water samples, this compels a conclusion that AMS satisfied the ODH request to rule out contamination. Yet, both of AMS' witnesses concede that contamination of the subject soil cannot be ruled out.[3] AMS' witness essentially conceded that "The NRC is stating, and they're correct, until we [AMS] actually go down under the floor and characterize what's down there, we [AMS] won't be able to prove to anybody's satisfaction what the radiological character is under the floor." (Tr. 108). (Emphasis added).
 {¶ 14} The license applicant bears the burden of proof to establish that it is entitled to a license. St. Augustine Catholic Churchv. Attorney General of Ohio, Charitable Foundations Section (1981),67 Ohio St.2d 133, 1378. To accept AMS' argument would be to shift the burden to the administrative agency to prove contamination. While it is understandable why AMS would opt not to test the soil directly at this time, the same does not require ODH to accept less than direct evidence on the state of the soil's contamination. In this regard, ODH offered AMS the reasonable alternative of allocating money in its decommissioning funding report. In the event the soil is not contaminated, as believed by AMS, the allocated money would not be spent.[4] AMS simply did not provide adequate responses to the ODH requests.
 {¶ 15} We find that the trial court's decision is based upon reliable, probative and substantial evidence in the record and therefore overrule the sole assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] Decommissioning a facility "means to safely remove any licensed operation from service and reduce residual radioactivity to a level that permits release of the licensee's property for unrestricted use." R.C.3748.01(D).
[2] The record also indicates that an NRC inspection conducted in 1999 revealed Cobalt-60 contamination in a hole and a tree outside the front entrance of the AMS facility. (Tr. 202). "The tree had a uptake of Cobalt-60 from contamination that was in the soil." Id. This 1999 finding was not part of AMS' initial renewal application submitted to the NRC in 1994. (Tr. 203).
[3] As noted in the ODH order "AMS' reliance on its water sampling is counter-intuitive since the drainage system is intended to keep any water away from the AMS building. Tr. 135-136; 150."
[4] While one AMS witness opined that the twenty-five percent (25%) contingency fund in the decommissioning funding plan would be adequate to cover the cost of remediating the subject soil in the event it is contaminated, there is evidence in the record to the contrary. Namely, a third party consulting firm employed by the NRC during the pendency of the initial renewal application proposed a cost estimate ranging between $5.3 and $13.1 million for the same remediation. This is a substantial discrepancy.