[Cite as *Solomon Cultivation Corp. v. Ohio Dept. of Commerce*, 2021-Ohio-46.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Solomon Cultivation Corporation, | : | |
| Appellant-Appellant, | : | No. 20AP-175 |
| | | (C.P.C. No. 19CV-7657) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Commerce, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on January 12, 2021

**On brief:** *Manos, Martin & Pergram Co., LPA,* and *Dennis L. Pergram*, for appellant. **Argued:** *Dennis L. Pergram.*

**On brief:** *Dave Yost*, Attorney General, and *Christie Limbert*, for appellee. **Argued:** *Christie Limbert.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant-appellant, Solomon Cultivation Corporation ("Solomon"), appeals from a judgment of the Franklin County Court of Common Pleas affirming the denial of Solomon's application for a medical marijuana cultivator level I provisional license by the Ohio Department of Commerce ("the department"). For the following reasons, we affirm.

**I. Factual and Procedural Background**

{¶ 2} In June 2017, Solomon applied for a medical marijuana cultivator level I provisional license. In December 2017, the department notified Solomon of its intent to deny Solomon's application. The notice indicated that Solomon did not meet the minimum required scores as to its operational and security plans. Solomon timely requested an administrative hearing, which was held in October 2018 before a hearing officer. The

hearing officer's April 2019 report and recommendation stated that Solomon failed to meet its burden of demonstrating the department erred in finding Solomon did not qualify for the requested license. Solomon filed objections to the hearing officer's report and recommendation. In its final order issued September 12, 2019, the department approved the recommendation of the hearing officer and denied Solomon's application. Solomon appealed to the trial court from the department's denial of its application. In February 2020, the trial court affirmed the department's denial.

{¶ 3} Solomon timely appeals.

## II. Assignments of Error

{¶ 4} Solomon assigns the following errors for our review:

[1.] The Common Pleas Court erred by not finding that the Department violated Solomon's right to due process of law under the Fourteenth Amendment to the United States Constitution.

[2.] The Common Pleas Court committed prejudicial error by excusing the Department from following its own rules and prior decision.

[3.] The trial court erred in not reversing the Department's order because at the administrative hearing, Solomon proved by a preponderance of the evidence that it was entitled to be awarded the points necessary to meet the required minimum of points.

[4.] It was legal error to place the burden of proof on Solomon at the administrative hearing.

## III. Discussion

### A. Standard of Review

{¶ 5} Applications for licenses to cultivate medical marijuana must be submitted to, and acted upon by, the department in accordance with its promulgated rules. R.C. 3796.09 through 3796.14. Review and challenge of a licensure determination is pursuant to R.C. Chapter 119. R.C. 3796.14. In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110

(1980). "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 6} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12. As to questions of fact, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court usually is "confined to the record as certified to it by the agency" and to "newly discovered" evidence that could not reasonably have been adduced before the agency. R.C. 119.12(K).

{¶ 7} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). While the common pleas court must examine the evidence, "[s]uch is not the charge of the appellate court." *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore* at 219. On review of purely legal questions, including whether the common pleas court applied the proper standard of review, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.); *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations*

*Bd.*, 63 Ohio St.3d 339, 343 (1992) ("it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder").

### B. Ohio's Medical Marijuana Control Program

{¶ 8} In 2016, the General Assembly enacted R.C. Chapter 3796 to authorize the use of medical marijuana and to establish the medical marijuana control program ("MMCP"). The department and the Ohio State Board of Pharmacy ("the board") administer the MMCP. R.C. 3796.02. "The department shall provide for the licensure of medical marijuana cultivators and processors and the licensure of laboratories that test medical marijuana. The board shall provide for the licensure of retail dispensaries and the registration of patients and their caregivers." *Id.* An entity seeking to cultivate medical marijuana must file an application for licensure with the department in accordance with rules adopted under R.C. 3796.03. R.C. 3796.09(A). The department is authorized to issue a license to an applicant if certain statutory conditions are met, such as passing a criminal background check, and "all other licensure eligibility conditions established in rules adopted under [R.C.] 3796.03." R.C. 3796.09(B).

{¶ 9} Pursuant to R.C. 3796.03(A), the department adopted Ohio Adm.Code Chapter 3796, establishing the standards and procedures for the MMCP, including those relating to the licensure of cultivators. The rules define two categories of cultivator licenses, level I and level II. Ohio Adm.Code 3796:1-1-01(A)(23) and (24). A level I cultivator is authorized to operate up to 25,000 square feet of space for marijuana cultivation, and a level II cultivator is authorized to operate up to 3,000 square feet of space for marijuana cultivation. *Id.* Until September 8, 2018, the director was authorized to allow up to 12 level I and 12 level II cultivator provisional licenses. Ohio Adm.Code 3796:2-1-01(A). After that date, the director may, in his or her discretion, issue additional cultivator provisional licenses based on changes in population and patient demand. Ohio Adm.Code 3796:2-1-01(B).

{¶ 10} A marijuana cultivator provisional license application must be submitted in accordance with R.C. Chapter 3796 and Ohio Adm.Code Chapter 3796. Ohio Adm.Code 3796:2-1-02(B). In addition to a non-refundable application fee, the applicant must submit a business plan, an operations plan, a quality assurance plan, a security plan, a financial

plan, and "[a]ny other information requested in the application instructions that the department deems necessary to evaluate and determine the applicant's suitability to operate as a cultivator." Ohio Adm.Code 3796:2-1-02(B)(1) through (7). The rule requires the applicant to include certain information within each plan. *Id.* After submission, the applications are reviewed "as described in [Ohio Adm.Code Chapter 3796] and the application instructions" and "ranked using an impartial and numerical process taking into account the criteria identified in rule 3796:2-1-02 of the Administrative Code, as developed by the department." Ohio Adm.Code 3796:2-1-03(A) and (B). "A provisional license shall be issued to the level I and level II qualified applicants receiving at least the minimum required score in each category and the highest total score overall as compared to the other applicants." Ohio Adm.Code 3796:2-1-04(A). But the department may refuse to issue a provisional license to an applicant if, in its view, the denial is necessary for the MMCP's administration, implementation, and enforcement. Ohio Adm.Code 3796:5-6-01(A)(7).

### C. First Assignment of Error

{¶ 11} In Solomon's first assignment of error, it alleges the trial court erred in not finding the department violated its due process rights in denying its application. This assignment of error is not well-taken.

{¶ 12} The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." But "[f]or all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. * * * Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 24-25 (1981). Although "due process" lacks a precise definition, courts have long held that due process requires both notice and an opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13.

{¶ 13} "Due process requires that an individual in an administrative proceeding is entitled to a fair hearing before an impartial tribunal." *Serednesky v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-633, 2006-Ohio-3146, ¶ 21, citing *In re Murchison*, 349 U.S. 133, 136 (1955). "It is well-settled that a reviewing court must presume that the

decision of an administrative agency is valid and was reached in a sound manner." *West Virginia v. Ohio Hazardous Waste Facility Approval Bd.*, 28 Ohio St.3d 83, 86 (1986).

{¶ 14} Solomon asserts the process used by the department in reviewing its application was deficient. In support, Solomon argues it was not sufficiently informed of the scoring process because the operational and security plans were evaluated by separate review teams, and the scoring of each team was reached by consensus in an undisclosed manner. Solomon contends the process for reaching that consensus was not guided by any published plan or administrative rule, thus creating possible disparity between review teams as to how they reached a consensus in scoring. Solomon also asserts it did not know that non-rule required criteria would be used in the scoring process, and that this augmentation of the licensure standards outside the administrative rule-making process was improper.

{¶ 15} We find the trial court did not err in concluding Solomon failed to demonstrate the department violated its due process rights. Solomon was on notice of the department's process for scoring medical marijuana cultivator license applications. The rules for the scoring were reasonably definite and clearly outlined in the department's application instructions. Solomon had notice of the factors the department would consider in the application process and was provided the opportunity to present information in support of its application.

{¶ 16} Further, evidence at the administrative hearing demonstrated that the department assigned three-person teams to score separate categories of the license applications. Each of the three individuals reviewed his or her assigned application part and then conferred as a team to reach a consensus as to scoring. Each team scored the assigned category for each of the 185 applications that were submitted. That is, the same team of three reviewed all 185 applications as to each category. While Solomon asserts it should know more about each team member's review and the score each assigned to each factor, the operative scores were the scores reached by the team. And as to the team's reaching of a consensus, Solomon faults the department for not explaining exactly how teams reached their findings. But Solomon cites no legal authority indicating that due process required such an explanation.

{¶ 17} The department's notice of intent to deny Solomon's application detailed each review team's findings as to all the criteria and Solomon's scoring deficiencies as to the operational and security plans. Solomon requested, and was provided, an opportunity to challenge, at an administrative hearing, the department's finding that Solomon did not qualify for a medical marijuana cultivator level I provisional license. In sum, Solomon was given notice and an opportunity to be heard. The trial court did not err in finding no due process violation.

{¶ 18} Therefore, we overrule Solomon's first assignment of error.

**D. Second Assignment of Error**

{¶ 19} Solomon's second assignment of error alleges the trial court erred in not finding the department failed to follow its rules and a prior decision. We disagree.

{¶ 20} Solomon argues the department did not follow its prior decision in *In re Pure OH, LLC*, Ohio Dept. of Commerce No. MMCP-C-201706-0042 (July 17, 2018). In that case, the department found that the hearing officer had erred in concluding that "if an applicant for a [level II medical marijuana cultivator provisional] License does not meet all mandatory application criteria listed in law and rule, it is automatically disqualified from consideration for a License." *In re Pure OH* at ¶ 6. The director resolved: "Instead, an applicant may still be considered for a License even if it does not meet all mandatory application criteria listed in rule and law so long as every plan it submits in its application meets or exceeds the minimum score required for that plan." *Id.* Based on the evidence presented at the administrative hearing, the director concluded the applicant had proven by a preponderance of evidence its entitlement to an extra point as to its security plan, thereby meeting the minimum raw score (12 out of a possible 20) for that plan as required according to the department's application form.

{¶ 21} Solomon's reliance on *Pure OH* is unavailing. First, *Pure OH* was not binding on the trial court, nor is it binding on this court. Second, the department's reasoning in that case was flawed because it discounts the mandatory nature of certain requirements in the rules. R.C. 3796.03 states the rules enacted thereunder must specify the "conditions that must be met to be eligible for licensure." Ohio Adm.Code 3796:2-1-02(B) states the criteria that are mandatory components of a license application, and the department must rank applicants "using an impartial and numerical process taking into account the criteria

identified in [that rule], as developed by the department." Ohio Adm.Code 3796:2-1-03(B). The scoring and ranking process, however, does not divest the applicant of its obligation to meet the mandatory conditions for licensure. Therefore, we are unpersuaded by Solomon's reliance on *Pure OH.*

{¶ 22} Solomon also argues the department application review teams arbitrarily assigned scores. For example, as to Solomon's security plan, the review team awarded zero points for physical security criteria. Solomon argues this was improper because the review team found it to be compliant with six of the eight delineated plan features in the physical security topic. Certain plan features, which are italicized on the score sheet, correspond to required elements of a license application pursuant to rule. Solomon asserts the review team arbitrarily awarded zero points for this topic based on the determination that Solomon did not meet all the italicized features. Solomon contends it should have received three points for the physical security criteria. But, to receive the three points, the score sheet required the plan to address "all of the required elements established in rule and adequately demonstrates 4-7 of the elements above, inclusive of the required elements." (Record of Proceedings at E3112-K75.)

{¶ 23} The review team determined Solomon was not compliant with two requirements within the physical security criteria, namely "[f]encing and lighting meets requirements of 2-2-05," and "[p]olicies and procedures to ensure a secure, safe, facility to prevent theft, loss, or diversion and protect facility personnel 2-1-03(B)(4)(a)." *Id.* These two requirements correspond to required elements for an application. *See* Ohio Adm.Code 3796:2-1-02(B)(5) (application must include a "security plan that establishes policies and procedures to prevent theft, loss or diversion from a cultivator and protect facility personnel"); Ohio Adm.Code 3796:2-2-05(A)(2) (applicant must "[m]aintain or construct fencing to prevent unauthorized entry or access to waste disposal containers, disposal areas or compost areas located outside the facility"); *see also* Ohio Adm.Code 3796:2-1-03(B)(4)(a) (factors the department must consider in ranking applicants include their "[p]olicies and procedures to ensure a secure, safe facility to prevent theft, loss, or diversion and protect facility personnel"). And, according to the score sheet, a plan not addressing "all of the required elements established in rule" should receive zero points for physical security. (Record of Proceedings at E3112-K75.) Because the review team found Solomon

did not comply with all rule required physical security criteria, it awarded zero points for that aspect of the application. Thus, Solomon's interpretation of the department's scoring system is incorrect.

{¶ 24} Accordingly, we overrule Solomon's second assignment of error.

### E. Third Assignment of Error

{¶ 25} In its third assignment of error, Solomon contends the trial court erred in not reversing the department's order because it proved by a preponderance of the evidence that it met and exceeded the minimum required scores for each of its plans, including its security plan and operations plan. We are unpersuaded.

{¶ 26} Solomon's appellate brief details the evidence that, in its view, establishes the existence of numerous criteria pertinent to the department's scoring of its security plan and operations plan. However, as a threshold matter, Solomon's score on the department's scoring rubric only became pertinent, under the statutory and regulatory framework, if Solomon's application met all requirements. That is, Solomon's score on the rubric was secondary to the mandatory rule requirements. And evidence supported the department's denial of Solomon's application because it did not meet all mandatory qualification requirements.

{¶ 27} The department's application instruction document indicates the department's review process would first involve a review of the application to determine if all mandatory qualification criteria were met. If an application met the mandatory qualification criteria, the department then would score the application. Solomon's application went through the second round of this process, suggesting it met all the mandatory qualification criteria. But the department's scoring of the application reflected a finding that Solomon did not meet all the mandatory qualification criteria.

{¶ 28} That the department proceeded to score Solomon's application did not absolve Solomon of the mandatory requirements. For example, Ohio Adm.Code 3796:2-1-02(B)(3)(b) required Solomon to submit an operations plan that "shall include * * * [e]xperience with the cultivation of medical marijuana or agricultural or horticultural products, operation of an agriculturally related business, or operation of a horticultural business." Despite this requirement, the evidence demonstrated that no owner, operator, or worker of Solomon had such experience in agriculture. To address this deficiency,

Solomon cites the administrative hearing testimony of Jessica Billingsley, the CEO of MJ Freeway, a consulting services provider for the cannabis industry based in Denver, Colorado. Billingsley testified that because the cannabis industry is emerging it is common for companies entering the industry to "engage with consultants who have that experience." (Record of Proceedings at E3112-B59, Tr. Vol. I at 101.) As to the experience issue, Solomon's application states that it "secured experience in cultivation with a grower who will also serve as the Quality Assurance Director in the start-up phase of the business." (Record of Proceedings at E3112-F97, 2B Operations Plan at 1.) Further, Solomon's "founders decided to employ seasoned hands-on educators to train and manage the initial hires. The contracts for this educational training will be secured, if granted a license. * * * [The consultant] with the support of his team of horticultural professionals and educators will train our workforce on-site." *Id.* In Billingsley's opinion, Solomon should have received credit for retaining a consulting company with experience in the cannabis cultivation industry. Solomon cites this testimony as evidence it demonstrated the necessary experience in its operations plan submitted as part of its application.

{¶ 29} Solomon's argument raises two issues. One is whether Solomon had experience specific to cannabis cultivation, and the other, more importantly, is whether Solomon had experience in agriculture for the purpose of the rule requirement. The department considered agricultural experience to include the following: "Has worked on, managed, or owned a farm similar in scale to application[;] Has worked in, managed, or owned a greenhouse[;] Has maintained a large garden or small family farm[;] Can be fulfilled by cannabis-specific cultivation experience." (Record of Proceedings at E3112-G34, Operations Plan Detailed Criteria Sheet.) As the trial court noted, Solomon did not dispute it had no owner, operator, or worker with agricultural experience. Solomon argues its hiring of the consultant satisfies the agriculture experience requirement of Ohio Adm.Code 3796:2-1-02(B). But the department did not agree that the retention of a consultant constituted agricultural experience. Such an interpretation was reasonable and consistent with the plain language of the rule. Under Ohio Adm.Code 3796:2-1-02(B), the "applicant" must have agricultural experience. Although not defined for the purpose of this rule, experience commonly means having practical knowledge, skill, or training in a particular activity. The rule does not indicate that an applicant's retention of a consultant, to advise

or train an owner, operator, or worker, is a means to meet the requirement for an applicant to have agricultural experience.

{¶ 30} We also reject Solomon's suggestion that the agricultural experience requirement was specific to experience in the cannabis industry and therefore unfair to applicants like it. Solomon seems to make a policy argument that it was unreasonable for the department to require experience in the cannabis industry when this industry is only now emerging, which necessarily limits the number of those with such experience. But that is not what the rule requires. It requires experience in agriculture, generally. While experience in the cannabis industry warranted additional points in the department's scoring rubric, that particular experience is not required under the rule.

{¶ 31} Because the evidence demonstrated Solomon did not meet all licensure eligibility conditions, the department's denial of Solomon's application was supported by reliable, probative, and substantial evidence. Consequently, we overrule Solomon's third assignment of error.

### F. Fourth Assignment of Error

{¶ 32} Solomon's fourth assignment of error alleges the trial court erred in not finding the department committed legal error in placing the burden of proof on Solomon at the administrative hearing. Solomon argues it was not its burden to prove its entitlement to a license, or to disprove the department's basis for denying its application. We disagree, as the burden was on Solomon to demonstrate the department should have granted it the requested license. *See St. Augustine Catholic Church v. Atty. Gen. of Ohio*, 67 Ohio St.2d 133, 138 (1981) (bingo license applicant had the burden to show it was entitled to a license). *See also Smith v. Columbus*, 10th Dist. No. 02AP-1219, 2003-Ohio-3303, ¶ 24 ("It is a fundamental concept in administrative law and procedure that the party asserting the affirmative of an issue bears the burden of proof.").

{¶ 33} Therefore, we overrule Solomon's fourth assignment of error.

## IV. Disposition

{¶ 34} Having overruled all four of Solomon's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.

_____